# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 2, 2012 Session

## STATE OF TENNESSEE v. ANGELA M. MERRIMAN

**Appeal by Permission from the Court of Criminal Appeals**
**Circuit Court for Warren County**
**No. F12979    Larry B. Stanley Jr., Judge**

---

**No. M2011-01682-SC-R11-CD - Filed August 16, 2013**

---

The defendant was arrested for driving under the influence, reckless endangerment with a motor vehicle, reckless driving, driving on a suspended license, and violation of the implied consent law. The arresting officer recorded his pursuit and stop of the defendant's vehicle using video recording equipment installed in his patrol vehicle, but the video recording was subsequently lost. The defendant filed a motion to dismiss alleging that the State's failure to preserve potentially exculpatory evidence would deprive her of a fair trial. Following a pre-trial evidentiary hearing, the trial court conducted an analysis under State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999), and dismissed several of the charges. The Court of Criminal Appeals affirmed the trial court's judgment, concluding that the trial court did not abuse its discretion in dismissing the charges. State v. Merriman, No. M2011-01682-CCA-R3-CD, 2012 WL 524474, at *3 (Tenn. Crim. App. Feb. 17, 2012). We granted the State permission to appeal. We apply a de novo standard of review and determine that, based on this record, the trial court did not err by finding that it would be fundamentally unfair to require the defendant to go to trial without the video recording. We also conclude that the trial court did not abuse its discretion in choosing dismissal as an appropriate remedy for the State's loss of the video recording.

### Tenn. R. App. P. 11 Appeal by Permission;
### Judgment of the Court of Criminal Appeals Affirmed

JANICE M. HOLDER, J., delivered the opinion of the Court, in which GARY R. WADE, C.J., and CORNELIA A. CLARK, WILLIAM C. KOCH, JR., and SHARON G. LEE, JJ., joined.

Robert E. Cooper, Jr., Attorney General and Reporter; Gordon W. Smith, Associate Solicitor General; Benjamin A. Ball, Assistant Attorney General; Lisa S. Zavogiannis, District Attorney General; and Darrell Julian, Assistant District Attorney General, for the appellant, State of Tennessee.

Dan T. Bryant, District Public Defender, and L. Scott Grissom, Assistant Public Defender, McMinnville, Tennessee, for the appellee, Angela M. Merriman.

**OPINION**

I. Facts and Procedural History

On November 18, 2010, Officer Robert Hammond of the McMinnville Police Department was traveling eastbound on West Main Street in McMinnville, Tennessee, when he observed a westbound vehicle driven by Angela M. Merriman veering into his lane of traffic from the center turn lane. Officer Hammond activated the video equipment in his patrol car, turned around, and initiated a traffic stop of Ms. Merriman's vehicle.

After Ms. Merriman exited the vehicle, Officer Hammond attempted to administer field sobriety tests to Ms. Merriman. Another officer, Sergeant Jones, arrived after the stop of Ms. Merriman's vehicle and was present during her performance of the field sobriety tests. Ms. Merriman informed Officer Hammond that she had health problems but agreed to attempt the tests. Officer Hammond first conducted the Horizontal Gaze Nystagmus ("HGN") test.[1] A second, unspecified field sobriety test ended when Ms. Merriman indicated her knee was "going out." Officer Hammond administered a final, unspecified test that he believed Ms. Merriman could attempt even with her health issues.

Officer Hammond placed Ms. Merriman under arrest and arranged for transportation of Ms. Merriman's two minor children, who were passengers in her vehicle. While Officer Hammond was reading the implied consent form to Ms. Merriman, she advised him she had taken Valium and hydrocodone earlier in the day. Ms. Merriman signed the implied consent form acknowledging her refusal to submit to a blood test. See Tenn. Code Ann. § 55-10-406(a)(1) (2012) (stating that any person driving a motor vehicle in Tennessee is presumed to have given consent to testing to determine whether alcohol or drugs are present in their blood).

On February 18, 2011, a Warren County grand jury indicted Ms. Merriman on one count each of driving under the influence of an intoxicant or drug accompanied by a child under eighteen years of age, reckless endangerment with a motor vehicle, reckless driving, driving on a suspended license, and violation of the implied consent law. A trial was scheduled for July 15, 2011.

---

[1] The Horizontal Gaze Nystagmus ("HGN") test is a standardized field sobriety test that tracks eye movements to gauge whether a suspect may be driving under the influence. State v. Murphy, 953 S.W.2d 200, 201-02 (Tenn. 1997) (holding that the HGN test is a scientific test that must satisfy the requirements of Rules 702 and 703 of the Tennessee Rules of Evidence to be admissible).

While preparing for the upcoming trial, Ms. Merriman's attorney listened to Officer Hammond's preliminary hearing testimony. Although Officer Hammond referenced a video recording of the traffic stop during his testimony, the video recording was not included in the State's discovery response. Ms. Merriman requested the video recording in a supplemental discovery request, but the State was unable to locate the recording. Ms. Merriman filed a motion to dismiss the indictment, alleging that the State failed to preserve potentially exculpatory evidence.

Two days before the scheduled trial date, the trial court conducted an evidentiary hearing on the motion to dismiss. In support of the motion, Ms. Merriman's counsel submitted State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999) and State v. Jeffrey Lee Fields, No. W2005-02128-CCA-R3-CD, 2007 WL 1028640 (Tenn. Crim. App. Apr. 5, 2007). In its opening remarks, the trial court recalled having addressed the issue of lost evidence in previous cases and further recalled that the court was required to make certain determinations about the lost evidence.[2] Following a discussion with counsel about the Ferguson requirements, the trial court heard Officer Hammond's testimony. Officer Hammond recounted the circumstances surrounding his stop and eventual arrest of Ms. Merriman. Officer Hammond described the content of the video recorded by the equipment in his patrol car and the unexplained loss of the video recording. Sergeant Jones was not called to testify at the pre-trial hearing.

At the conclusion of Officer Hammond's testimony, the trial court revisited the factors discussed with counsel initially and determined that the State's failure to preserve the video recording warranted dismissal of the charges of driving under the influence, reckless endangerment, and reckless driving.

The State appealed pursuant to Rule 3(c) of the Tennessee Rules of Appellate Procedure. Tenn. R. App. P. 3(c)(1) (providing the State with an appeal as of right in criminal actions when the substantive effect of the trial court's order is dismissal of an indictment). The Court of Criminal Appeals affirmed the trial court's judgment, concluding that the trial court did not abuse its discretion in dismissing the charges due to the State's failure to preserve evidence. State v. Merriman, No. M2011-01682-CCA-R3-CD, 2012 WL 524474, at *3 (Tenn. Crim. App. Feb. 17, 2012). We granted the State permission to appeal.

---

[2] The trial court referred to Ferguson as a Court of Criminal Appeals opinion. It is clear from the record, however, that the factors cited by the trial court were those we adopted in Ferguson.

## II. Analysis

The issues presented in this appeal derive from our decision in State v. Ferguson, 2 S.W.2d 912 (Tenn. 1999), in which we conducted a post-trial due process analysis to determine the consequences of the State's loss or destruction of evidence. We will determine the appropriate standard of review of a trial court's ruling under Ferguson and examine whether the trial court conducted a proper Ferguson analysis in Ms. Merriman's case.

## A. *State v. Ferguson*

Our examination begins with a review of our holding in State v. Ferguson. Mr. Ferguson was observed slumped over in his van, which was parked on an interstate ramp. Ferguson, 2 S.W.3d at 914. When the investigating officer opened the van door and awakened Mr. Ferguson, he smelled a strong odor of alcohol and noticed that Mr. Ferguson's speech was slurred. Id. The officer administered two field sobriety tests at the scene. Id. Based on his observations, the officer arrested Mr. Ferguson for driving under the influence and transported him to the police station. Id. Additional field sobriety tests were conducted at the station, and a video recording of those tests was inadvertently erased before the original recording had been reviewed. Id. A jury subsequently convicted Mr. Ferguson of driving under the influence. On appeal, Mr. Ferguson complained that his constitutional rights had been violated by the destruction of the video recording.

In Ferguson, we explained that the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial. Ferguson, 2 S.W.3d at 915-16 (citing U.S. Const. amend. XIV, § 1 and Tenn. Const. art. I, § 8). We determined that the due process required under the Tennessee Constitution was broader than the due process required under the United States Constitution, and we observed that fundamental fairness, as an element of due process, requires a review of the entire record to evaluate the effect of the State's failure to preserve evidence. Ferguson, 2 S.W.3d at 914, 917. Ferguson rejected the strict "bad faith" analysis of Arizona v. Youngblood, which stated that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." 488 U.S. 51, 58 (1988). Instead, we adopted a balancing approach in which bad faith is but one of the factors to be considered in determining whether the lost or destroyed evidence will deprive a defendant of a fundamentally fair trial. Ferguson, 2 S.W.3d at 916-17 n.10 (considering bad faith within the "degree of negligence" factor).

Ferguson requires a trial court to determine "[w]hether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair." Ferguson, 2 S.W.3d at 914. When this claim is raised by a defendant, Ferguson first requires the trial court to determine whether the State had a duty to preserve the evidence. In Ferguson, we acknowledged the

-4-

State's general duty to preserve all evidence subject to discovery and inspection under Rule 16 of the Tennessee Rules of Criminal Procedure and other applicable law, including Brady v. Maryland, 373 U.S. 83 (1963). Ferguson, 2 S.W.3d at 917. We recognized, however, the difficulty in defining the boundaries of the State's duty to preserve evidence when its true nature, whether exculpatory, inculpatory, or neutral, can never be determined. Ferguson, 2 S.W.3d at 915, 917.

Although difficult to define, the State's duty to preserve evidence is limited to constitutionally material evidence described as "evidence that might be expected to play a significant role in the suspect's defense." Ferguson, 2 S.W.3d at 917 (quoting California v. Trombetta, 467 U.S. 479, 488 (1984)). To meet this materiality standard, we held that the evidence must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.[3] Ferguson, 2 S.W.3d at 915, 918. If the trial court determines that the State had a duty to preserve the evidence, the court must determine if the State failed in its duty. Ferguson, 2 S.W.3d at 917.

If the trial court finds that the State failed in its duty to preserve the evidence, the trial court must consider the following factors to determine the consequences of that failure:

(1) [t]he degree of negligence involved;
(2) [t]he significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
(3) [t]he sufficiency of the other evidence used at trial to support the conviction.

Ferguson, 2 S.W.3d at 917 (footnote omitted). The trial court must balance these factors to determine whether a trial conducted without the missing or destroyed evidence would be fundamentally fair. Id. If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction. Id.

---

[3] Although we cited with approval the standard enunciated in California v. Trombetta, we did not adopt its materiality standard requiring the evidence to possess apparent exculpatory value. As noted, in most instances the true nature of the lost or destroyed evidence may never be known. In contrast, we used the terms "potentially" exculpatory evidence and "allegedly" exculpatory evidence in our analysis of the adopted factors to more appropriately describe such evidence. See Ferguson, 2 S.W.3d at 915, 918.

## B. Pre-trial Application of *Ferguson*

Before we begin our examination of the issues raised by the parties in this case, we first address an underlying issue concerning our decision in State v. Sherman, 266 S.W.3d 395 (Tenn. 2008) and the possibility that Sherman or even Ferguson may preclude the trial court's pre-trial application of Ferguson in this case. Neither party has raised the timing of Ms. Merriman's motion as an issue, and we are aware that our discussion may well fall into the heading of dicta. With these disclaimers in mind, however, we will proceed to address the timing of the motion in this case.

In State v. Sherman, we considered the propriety of the trial court's pre-trial dismissal of an indictment. A brief factual summary of Sherman is necessary to place the trial court's ruling in context. In Sherman, the defendant held religious services in his six-bedroom home and allowed certain parishioners to reside with him, including a mother and her fourteen-year-old daughter. Sherman, 266 S.W.3d at 399. The child began to experience health problems and was advised by a chiropractor to seek treatment at a medical center. Id. Because the mother did not have adequate health insurance, the child was taken to a walk-in clinic instead. Id. While the ministry was attempting to raise adequate funds for the child's anticipated medical expenses, she died of cancer. Id. A grand jury indicted the defendant on one count of misdemeanor child abuse and child neglect. Id. at 400.

The defendant filed a pre-trial motion to dismiss the indictment under Tennessee Rule of Criminal Procedure 12(b). Sherman, 266 S.W.3d at 400. In his motion, the defendant argued that because he was not the child's parent or guardian, he had no legal or special duty to provide care for the child and therefore could not be held criminally liable for her death. Id. At the motion hearing, the State conceded that the defendant was not married to the child's mother and was neither the parent nor the guardian of the child. Id. The trial court sustained the defendant's motion to dismiss based on the State's concession. Id. Our intermediate appellate court reversed the trial court and reinstated the indictment.

In affirming the Court of Criminal Appeals, we determined that the duty imposed in the criminal statute under which the defendant was indicted may extend to those who stand in loco parentis to the victim. Sherman, 266 S.W.3d at 405. We concluded that the issue of whether the defendant stood in loco parentis to the child who lived in the defendant's residence with her mother was a factual determination to be made by a jury. Id. at 407 n.13. Citing United States v. Covington, 395 U.S. 57, 60 (1969), we noted that an issue presented in a pre-trial motion is capable of determination prior to trial if "the facts surrounding the commission of the alleged offense would be of no assistance in determining" the issue. Sherman, 266 S.W.3d at 403. Because the undisputed facts presented at the motion hearing were insufficient and were intertwined with the ultimate issue of the defendant's guilt, the motion to dismiss was not ripe and was therefore prematurely granted.

This same principle was espoused earlier in State v. Goodman, 90 S.W.3d 557 (Tenn. 2002). Mr. Goodman filed a pre-trial motion to dismiss an indictment charging him with the especially aggravated kidnapping of his daughter. Id. at 559. In his motion, Mr. Goodman claimed that the plain language of the statute prevented a parent from being prosecuted and sought dismissal without a trial on the merits. Id. at 562. The trial court conducted an evidentiary hearing on the motion during which the defense and the State entered certain stipulated facts including Mr. Goodman's status as the natural father of the victim. Id. at 560. The trial court granted the defendant's motion. Id. The State did not assert in its answer to the motion, during the hearing on the motion, or on appeal of the case to the Court of Criminal Appeals that the issue was incapable of pre-trial determination. Id. The Court of Criminal Appeals sua sponte reversed the trial court's determination on the basis that the dismissal under Rule 12(b) was improper. We reversed the Court of Criminal Appeals and reinstated the judgment of the trial court granting the defendant's pre-trial motion to dismiss.

In Goodman, as in Sherman, we considered the propriety of ruling on a pre-trial motion to dismiss under Tennessee Rule of Criminal Procedure 12(b). We recognized that the issue in the pre-trial motion must be "capable of determination without the trial of the general issue." Goodman, 90 S.W.2d at 561. In other words, "[w]here the factual findings necessary to resolve the motion are intertwined with the general issue, a ruling must be deferred until trial since, in criminal cases, there simply is no pretrial procedure akin to summary judgment for adjudicating questions of fact involving the general issue of guilt or innocence." Id. Although we continue to recognize this important principle, we find some important procedural distinctions between Ferguson and the Sherman and Goodman decisions.

Sherman and Goodman prohibit a trial court from ruling on a pre-trial motion to dismiss when the ruling must also resolve questions of fact on the ultimate issue of a defendant's guilt or innocence. Ferguson, on the other hand, directs a constitutional inquiry using a balancing analysis to determine whether a defendant can receive a fundamentally fair trial when evidence is lost or destroyed. Although one part of that analysis includes a review of the sufficiency of the evidence to convict the defendant, the Ferguson inquiry into the adequacy of the state's evidence is not a vehicle to adjudicate questions of fact involving the "general issue of guilt or innocence."

Ferguson's examination of the sufficiency of the evidence merely permits an evaluation of the significance of the lost or destroyed evidence and may assist the trial court in determining an appropriate remedy. For example, when the State's evidence is overwhelming, a trial court may determine that the lost evidence is less significant. On the other hand, when the State's case is legally sufficient but is based on minimal evidence, the trial court may find the same lost evidence to be more significant when it considers all of the evidence and balances the other Ferguson considerations. We conclude that neither Sherman

-7-

nor Goodman precludes a trial court from considering a pre-trial motion to dismiss under Ferguson.

Although we conclude that Sherman and Goodman do not prohibit a trial court from conducting a Ferguson analysis pre-trial, we nonetheless recognize that the rules of criminal procedure may limit the circumstances under which a pre-trial motion to dismiss based on Ferguson may be granted. A defendant has no traditional procedural vehicle to challenge the sufficiency of the State's evidence prior to trial. Cf. Tenn. R. Crim. P. 29 (authorizing the trial court to enter a judgment of acquittal on one or more offenses charged in the indictment after the evidence on either side is closed). Furthermore, a defendant cannot file a pre-trial motion to dismiss to "force the trial court to conduct a 'mini-trial' in which the State must present its proof on the merits of the charge . . . or be cut short in its attempt to prosecute." State v. Norton, 55 S.W.3d 580, 582 (Tenn. Crim. App. 2001) (internal quotation marks omitted).

When a Ferguson motion is brought prior to trial, however, the trial court is required to assess the sufficiency of the evidence that the State intends to introduce at trial. Because of the procedural limitations inherent in a criminal case, we must consider whether a trial court can assess the sufficiency of the evidence in conducting a Ferguson analysis prior to trial. In making this determination, it is useful to review unreported decisions of the Court of Criminal Appeals that have applied Ferguson.

In State v. Clark, No. E2009-01795-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 808 (Tenn. Crim. App. Oct. 24, 2011), the defendant was charged with vandalism and reckless endangerment when he fired shots at a traffic light camera because he believed he would receive a traffic ticket. Id. at *4-5. When the damaged camera and camera housing were not provided as part of discovery, the trial court conducted a hearing and granted the defendant's motion to dismiss based on Ferguson. Id. at *14-15. The Court of Criminal Appeals conducted its own Ferguson analysis, including the "sufficiency of the other evidence used at trial to support the conviction." Id. at *50. Although it recognized that the trial court dismissed the indictment prior to trial, the Court of Criminal Appeals determined that the police report, the preliminary hearing testimony, and the video recording of the stop were adequate to review the sufficiency of the evidence. Id. at *50-51.

In State v. Capps, No. E2007-02734-CCA-R3-CD, 2009 WL, at *1 (Tenn. Crim. App. Mar. 13, 2009), the defendant was charged with aggravated robbery of a convenience store. The lead investigator obtained a videotape from the store's surveillance camera that captured the offense as it occurred. Id. at *3-4. The investigator viewed the videotape and made his own assessment of its value, then returned the videotape to the convenience store. Id. at *5-6. The defendant filed a motion to dismiss after the State indicated the tape was "missing." Id. at *4-5. Following a pre-trial hearing at which the investigator was the sole

witness, the trial court determined that dismissal was the only appropriate remedy. Id. at *7-8. The Court of Criminal Appeals conducted its own Ferguson analysis and affirmed the trial court's pre-trial dismissal of the indictment based on the weight given to the first two Ferguson considerations. Id. at *14-15.

Having reviewed these cases in which trial courts have conducted a Ferguson analysis pre-trial,[4] we turn to the facts of this case. The trial court conducted an evidentiary hearing two days prior to the scheduled trial date to address Ms. Merriman's motion to dismiss based on Ferguson. The trial court heard from one witness, Officer Hammond, who established the factual bases of the underlying charges. Officer Hammond recounted the pursuit and stop of Ms. Merriman's vehicle and recalled activating the video equipment in his car when he first encountered her vehicle. According to Officer Hammond, the video recording showed Ms. Merriman's vehicle traveling in his lane of traffic and his pursuit and stop of her vehicle. Officer Hammond testified that the video recording also showed Ms. Merriman's attempts to complete the field sobriety tests, the officer's recitation of the implied consent law to Ms. Merriman and her refusal to submit to a blood test, and her statement that she had taken "a Valium and hydrocodone."

Officer Hammond explained the McMinnville Police Department's standard procedure for retrieval of the video recordings from patrol vehicles. Following an arrest, officers are required to review the video recording in their patrol cars and make field notes. A supervisor later removes the hard drive containing the video recording and provides it to a patrol division captain who logs the hard drive into evidence.

Officer Hammond testified that he followed the standard procedure with respect to the video recording of Ms. Merriman's traffic stop and reviewed the video recording to make his field notes. However, he had no knowledge of the removal of the hard drive or the entry of the hard drive into the evidence log. Officer Hammond testified that Sergeant Jones searched numerous times but was unable to locate the video recording of Ms. Merriman's stop.[5]

_____

[4] See also State v. Fairbetter, No. M2004-00594-CCA-R3-CD, 2004 WL 2218477, at *3-4 (Tenn. Crim. App. Oct. 1, 2004) (finding that although the sufficiency of the evidence was difficult to address because the defendant's motion to dismiss had been granted pre-trial, the limited evidence in the record, which included testimony by the arresting officer that "the defendant had watery eyes and slurred speech and smelled of alcohol," "would have been sufficient to support a conviction for driving under the influence"); State v. Martin, No. E2001-00914-CCA-R9-CD, 2002 WL 927427, at *5-6 (Tenn. Crim. App. Sept. 9, 2002) (conducting a Ferguson analysis on a pre-trial motion to suppress and remanding the case for trial based on the "available substitute evidence that appear[ed] both reliable and probative").

[5] It is unclear from Officer Hammond's testimony whether Sergeant Jones played a role in the
(continued...)

-9-

At the conclusion of the hearing, the trial court summarized the State's case as consisting of the testimony of Officer Hammond and possibly that of Sergeant Jones. The trial judge surmised that Sergeant Jones' testimony would corroborate Officer Hammond's testimony. The State did not comment on the trial judge's observation or offer any correction of the trial court's summation. The State did not object at any time to proceeding on the Ferguson motion prior to trial. Further, the State never indicated that it had additional evidence that would have been presented at trial but that it was being denied the opportunity to do so.[6] Under these circumstances, the trial court was not prohibited from conducting a pre-trial Ferguson analysis and had sufficient evidence to make a pre-trial ruling on the motion to dismiss.

Due to the nature of Ferguson's inquiry, we are unable to enumerate every possible procedural setting in which a Ferguson analysis could be conducted prior to trial. We caution, however, that a trial court conducting a Ferguson analysis must assess the sufficiency of the State's evidence while being mindful that this assessment is not the equivalent of determining the defendant's guilt or innocence beyond a reasonable doubt. Again, Ferguson's inquiry into the sufficiency of the State's evidence provides context to the lost or destroyed evidence, allowing the trial court to weigh the significance of the lost evidence in light of the other evidence and to determine an appropriate remedy, if one is required.

The State may object to a pre-trial motion if it has other evidence to present at trial that would assist the trial court's Ferguson analysis, and it is within a trial court's discretion to reserve ruling on a Ferguson motion until the evidence is presented at trial.

## C. Standard of Review

In this appeal, we are asked to clarify the appropriate standard of review of the trial court's determination that the State's failure to preserve the video recording violated Ms. Merriman's constitutional right to a fair trial. We must also determine which standard of review applies to the trial court's dismissal of several counts of the indictment as a remedy

---

[5] (...continued)
retrieval of the hard drive from Officer Hammond's vehicle or if a patrol division captain took possession of the hard drive or logged it into evidence, as required by the McMinnville Police Department procedures.

[6] The trial court may well have erred in granting the motion to dismiss if the State had objected on the grounds that it intended to present additional evidence at trial. Without knowing the nature of the State's objection, however, it is difficult to conclude that *any* objection by the State would preclude a trial court from considering a Ferguson motion prior to trial.

for that violation. The standard of review of a trial court's ruling under <u>Ferguson</u> is an issue of first impression for this Court.[7]

The State submits that the trial court's findings as to whether the trial was fundamentally fair warrants de novo review but that the trial court's choice of remedy should be reviewed under an abuse of discretion standard. Ms. Merriman, however, advocates the application of an abuse of discretion standard to an appellate court's entire review of the trial court's <u>Ferguson</u> analysis. We conclude that the trial court's decision concerning the fundamental fairness of the trial must be reviewed under a de novo standard. If we conclude that the trial would be fundamentally unfair in the absence of the lost evidence, we will apply an abuse of discretion standard to review the appropriateness of the remedy imposed by the trial court.

Our decision in <u>Ferguson</u> rests on the Tennessee Constitution and its due process clause. Tenn. Const. art. I, § 8. Although we determined that the minimum level of protection mandated by the federal constitution should be expanded under the Tennessee Constitution when evidence is lost or destroyed, it is appropriate to consider the standard of review used by the United States Supreme Court in reviewing decisions involving the United States Constitution.

In <u>Ornelas v. United States</u>, 517 U.S. 690 (1996), the Supreme Court examined the appropriate standard of review in determining reasonable suspicion or probable cause under the Fourth Amendment and held that a de novo review is appropriate when reviewing decisions involving the United States Constitution. <u>Ornelas</u>, 517 U.S. at 697-99. The Supreme Court specifically rejected the application of a deferential standard of review to the determination of constitutional issues. <u>Id.</u> at 697. The Court in <u>Ornelas</u> reasoned that de novo review, unlike an abuse of discretion standard, will prevent unacceptably varied results based on the interpretation of similar facts by different trial judges and "is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles." <u>Id.</u> Further, de novo review will tend to unify precedent and stabilize the law. <u>Id.</u>

---

[7] We recognize, however, that the Court of Criminal Appeals has frequently applied an abuse of discretion standard when reviewing trial court decisions under <u>Ferguson</u>. <u>See, e.g.</u>, <u>State v. Asbury</u>, No. E2011-00431-CCA-R3-CD, 2012 WL 4459819, at *11 (Tenn. Crim. App. Sept. 27, 2012); <u>State v. Clark</u>, No. E2009-01795-CCA-R3-CD, 2011 Tenn. Crim. App. LEXIS 808, at *25 (Tenn. Crim. App. Oct. 24, 2011); <u>State v. Capps</u>, No. E2007-02734-CCA-R3-CD, 2012 WL 690685, at *4 (Tenn. Crim. App. Mar. 13, 2009); <u>see also</u> <u>State v. Lawrence</u>, No. E2007-00114-CCA-R9-CD, 2008 WL 704355, at *13, *15 (Tenn. Crim. App. Mar. 17, 2008) (applying an abuse of discretion standard to both the trial court's determination that the investigating officers had a duty to preserve the physical evidence and to the trial court's decision to suppress other evidence as an appropriate remedy).

-11-

Although the Supreme Court held that de novo review is appropriate when reviewing constitutional issues, it stated that deference should be given to a trial court's findings of fact. Ornelas, 517 U.S. at 699; see also Cooper Indus., Inc. v. Leatherman Tool Grp., Inc., 532 U.S. 424, 436 (2001) (applying the de novo standard of Ornelas in reviewing a court's determination of whether a punitive damages award was "constitutionally excessive"); United States v. Bajakajian, 524 U.S. 321, 336 n.10 (1998) (citing Ornelas and applying the de novo standard with deference given to the lower court's factual findings in a punitive forfeiture proportionality determination).

While not binding on this Court, the United States Supreme Court's reasoning in Ornelas is instructive in determining the appropriate standard for our review of a trial court's application of the Ferguson factors and its conclusion as to whether the lost or destroyed evidence will render a trial fundamentally unfair under article I, section 8 of the Tennessee Constitution. Moreover, this analysis is not without precedent in our appellate review. For example, we review post-conviction cases using a de novo standard of review, which is embodied in Rule 13(d) of the Tennessee Rules of Appellate Procedure. Fields v. State, 40 S.W.3d 450, 456 (Tenn. 2001). Under the Rule 13(d) standard, appellate courts review a trial court's conclusions of law and mixed questions of law and fact de novo with no presumption of correctness. Tenn. R. App. P. 13(d); Fields, 40 S.W.3d at 457-58. The trial court's findings of fact, however, are entitled to substantial deference on appeal and are conclusive unless the evidence preponderates against them. Tenn. R. App. P. 13(d); Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). Because the application of Ferguson, like Ornelas, presents a constitutional issue, we will apply a de novo standard of review to the trial court's decision concerning the fundamental fairness of the trial.

We next determine the standard of review applicable to a trial court's chosen remedy for the denial of a defendant's right to a fundamentally fair trial. We have traditionally applied an abuse of discretion standard to a trial court's decision to dismiss an indictment. See State v. Benn, 713 S.W.2d 308, 311 (Tenn. 1986) (applying an abuse of discretion standard to a trial court's decision to dismiss an indictment under Rule 48(b) of the Tennessee Rules of Criminal Procedure); State v. Harris, 33 S.W.3d 767, 771-72 (Tenn. 2000) (applying an abuse of discretion standard to a trial court's decision to dismiss a superseding indictment). A trial court abuses its discretion when it applies an incorrect legal standard or reaches a decision that is against logic or reasoning and that causes an injustice to the party complaining. State v. Turner, 352 S.W.3d 425, 428 (Tenn. 2011).

In Ferguson, we held that dismissal of the indictment was only one of the possible remedies available to the trial court and indicated that the trial court had broad authority to fashion a remedy. Ferguson, 2 S.W.3d at 917. Ferguson clearly recognizes the discretion that should be afforded the trial court in fashioning the appropriate remedy under the circumstances. For these reasons, we hold that the trial court's choice of remedy is subject

to review under the abuse of discretion standard. Thus, when the chosen remedy is consistent with the findings made by the trial court utilizing the Ferguson considerations, we will not overrule that choice on appeal.

### D. Application of Standard of Review

We now turn to the application of the standard of review to the facts of this case. Although we give deference to the trial court's factual findings, we will review the trial court's conclusion that Ms. Merriman would have been denied a fundamentally fair trial de novo with no presumption of correctness.

Initially, we consider whether the State had a duty to preserve the video recording.[8] For this duty to arise, the video recording must be expected to play a significant role in Ms. Merriman's defense. Specifically, the video recording must have potential exculpatory value and be of such a nature that Ms. Merriman would be unable to obtain comparable evidence by other reasonably available means. Ferguson, 2 S.W.3d at 917.

The value of video evidence in a traffic stop generally hinges on a number of factors, including weather conditions, placement of video equipment, and the types of field sobriety tests administered. In this case, the State has not argued that the video recording was of poor quality or was less than complete. To the contrary, Officer Hammond, the only person known to have viewed the video recording, testified unequivocally that the video recording would have been useful at trial.[9] From this testimony, we can surmise that video quality was not at issue and that the video had evidentiary value.

The materiality standard, however, requires that the video recording have "potential" exculpatory value. According to Officer Hammond, the video recording captured Ms. Merriman's conduct in its entirety. Therefore, the video recording was relevant evidence as to all of Ms. Merriman's charges. Although the video recording is not available for viewing, we recognize that the video recording could have been beneficial evidence to both the State and Ms. Merriman. Had the case proceeded to trial, the fact-finder could have viewed the

---

[8] Although audio or video recordings are frequently used by law enforcement, officers have no duty to make such recordings. Once created, however, these recordings become part of the State's evidence against a defendant and are subject to the discovery requirements of Tennessee Rule of Criminal Procedure 16 and Brady.

[9] This testimony highlights the difficulty in assessing the value of lost evidence. Officer Hammond testified that the evidence would have been helpful to the State's case. Without the lost evidence, however, his opinion as to whether the lost evidence is inculpatory or exculpatory should not control the trial court's finding under Ferguson. To conclude otherwise would be to effectively dispense with the need for a Ferguson examination when evidence is lost or destroyed.

video recording and made its own determinations as to whether Ms. Merriman was driving recklessly in a manner that endangered Officer Hammond and whether Ms. Merriman's performance on the field sobriety tests was attributable to her use of Valium and hydrocodone or to her health issues as she claimed. We are satisfied that the video recording had potential exculpatory value.

For the State to have a duty to preserve evidence, we must also find that Ms. Merriman would be unable to obtain comparable evidence by other reasonably available means. A video recording from a patrol vehicle is unique by its very nature. No evidence comparable to this video recording could have been obtained through other means.

Although we are unable to assess the precise nature of the evidence contained in the lost video recording, Officer Hammond's testimony established that the video recording "might be expected to play a significant role in [Ms. Merriman's] defense." The State therefore had a duty to preserve the video recording as potentially exculpatory evidence. Ferguson, 2 S.W.3d at 917. The State therefore failed in its duty when it lost the video recording.

Having concluded that the State failed in its duty to preserve the video recording, our review turns to the three remaining Ferguson factors provided to guide the decision in this case regarding the consequences of the State's failure. Ferguson, 2 S.W.3d at 917.

The first factor we consider is the degree of negligence involved in the State's failure to preserve the video recording. In Ferguson, we indicated that when potentially exculpatory evidence is lost or destroyed, negligence by the State is presumed. Ferguson, 2 S.W.3d at 917 n.10. In this case, the presumption is not overcome.

The McMinnville Police Department had a procedure in place for the recording and preservation of video evidence. The standard procedure required the arresting officer to review a video recording following the arrest in preparation of the officer's field notes. A supervisor or patrol captain was responsible for removing from the patrol vehicles the hard drive on which the video recordings were stored and for logging the drive into evidence. Officer Hammond followed the McMinnville Police Department's standard procedure when he reviewed the video recording to make field notes following the arrest. Officer Hammond could offer no further testimony on the chain of custody of the video recording after it left his patrol car. According to Officer Hammond, Sergeant Jones was unable to locate the video recording despite repeated attempts to do so. No evidence was presented, however, to indicate that the supervisor or patrol captain violated their respective obligations under the established policy.

-14-

At the conclusion of Officer Hammond's testimony, the trial court accurately recited the first Ferguson consideration but expressed its difficulty in determining whether the loss of the video resulted from gross negligence or general negligence. The trial court's failure to state the specific degree of negligence is not fatal. From our own review, we find that the conduct in this case amounts to simple negligence.

The second Ferguson factor examines the significance of the destroyed evidence considered in light of the probative value and reliability of the remaining secondary or substitute evidence. Ferguson, 2 S.W.3d at 917. In this case, the video recording was the only non-testimonial evidence of Officer Hammond's pursuit and stop of Ms. Merriman's vehicle. The trial court described the video recording as key evidence of Ms. Merriman's driving and her performance on the field sobriety tests, specifically distinguishing Ms. Merriman's case from Ferguson and other cases in which blood or breath evidence is also presented. Noting the absence of a passenger in either Ms. Merriman's vehicle[10] or Officer Hammond's vehicle, the trial court reasoned that without the video, "[the case] would remain [Ms. Merriman's] word against [Officer Hammond's]." As a result, the video recording was highly probative in determining what actually occurred during Ms. Merriman's traffic stop.

The issues of Ms. Merriman's driving and her performance on the field sobriety tests were central to the State's case against Ms. Merriman. Although we cannot determine whether the video recording ultimately would have favored the State's or Ms. Merriman's position, the loss of the video recording prevented the fact-finder from viewing the events as they actually occurred. Because no other secondary or substitute evidence was available, the case was reduced to a credibility contest between the officer or officers and Ms. Merriman, had she elected to testify at trial. We conclude, therefore, that the video recording would have played a significant role in the outcome of Ms. Merriman's case.

The final Ferguson factor requires us to consider the sufficiency of the remaining evidence used at trial to support the convictions. Officer Hammond testified that he first encountered Ms. Merriman when her vehicle entered into his lane of travel from the center turn lane. Officer Hammond's observations of Ms. Merriman's driving presumably serve as the factual basis for the reckless endangerment and reckless driving charges.

As to the DUI charge, the trial court summarized the State's evidence as including the testimony of Officer Hammond and possibly the testimony of Sergeant Jones, should he be called as a witness at trial. Officer Hammond described his attempts to administer field sobriety tests, but his testimony is inconclusive. We can glean from his testimony that he

---

[10] The transcript indicates that Ms. Merriman's two minor children (ages 7 and 10) were present in her vehicle during the traffic stop in question. The children's presence served as the factual basis of some of the criminal charges. The children were not called as witnesses.

administered the HGN test and one other unidentified test. Ms. Merriman was unable to perform on a third unidentified test due to her health problems. Although Officer Hammond failed to explicitly state how Ms. Merriman performed on the tests, the reasonable inference we can draw from the entirety of his testimony is that Ms. Merriman's performance was unsatisfactory in Officer Hammond's judgment. Had he testified, Sergeant Jones' testimony likely would have corroborated the testimony of Officer Hammond. Because Ms. Merriman refused testing under the implied consent law, no blood or breath testing was conducted. No alcohol was involved but Ms. Merriman admitted to her earlier ingestion of a Valium and hydrocodone. The trial court found the remaining evidence to be minimal.

As noted above, we review the trial court's conclusions of law and mixed questions of law and fact de novo with no presumption of correctness. Fields, 40 S.W.3d at 456. However, we recognize that the trial court's findings of fact are entitled to substantial deference on appeal and are conclusive unless the evidence preponderates against them. Henley, 960 S.W.2d at 578. We conclude that the evidence does not preponderate against the trial court's factual determinations.

## E. Application of *Ferguson* Factors

We review the application of the Ferguson considerations de novo and conduct our own balancing analysis. The State had no duty to create a video recording of Ms. Merriman's traffic stop. When the video was recorded, however, it became a part of the State's evidence against Ms. Merriman and its disclosure was required under Tennessee Rule of Criminal Procedure 16 and Brady. Applying our materiality standard, we conclude that the video recording could be expected to play a significant role in the outcome of Ms. Merriman's case. The video recording possessed potential exculpatory value, and no evidence comparable to this video recording could have been obtained through other means. We conclude that the State had a duty to preserve the video recording and failed in its duty when it lost the video recording.

Having determined that the State had a duty to preserve the video recording, we turn to the remaining Ferguson considerations. We conclude that the loss of the video recording resulted from simple negligence. Although the McMinnville Police Department had a policy in place for the collection and storage of video evidence, the loss of the hard drive on which Ms. Merriman's video recording was stored was not explained.

The two final Ferguson considerations require us to consider the significance of the video recording and the sufficiency of the remaining evidence. The lost evidence was significant because it recorded Ms. Merriman's conduct, which provided the factual basis for her charges. The video was a recording of the alleged offenses as they occurred, was probative of the issues surrounding all three dismissed charges, and was the only non-

-16-

testimonial evidence of the pursuit and stop of Ms. Merriman's vehicle. We must consider the significance of the video recording, however, in light of the sufficiency of the other evidence.

Without the video recording, the evidence supporting the reckless endangerment and reckless driving charges consisted of Officer Hammond's account of his encounter with Ms. Merriman. If the video recording had not been created, the sufficiency of the evidence would have been determined by the fact finder based on testimonial evidence and credibility determinations derived from that evidence. We recognize, as did the trial court, that a video recording is not required, and the evidence in most traffic cases consists entirely of testimonial evidence. The video recording became more significant in this case because the only remaining evidence of the reckless endangerment and reckless driving was Officer Hammond's testimony. According to Officer Hammond, the video recording would have shown Officer Hammond's view of Ms. Merriman's vehicle and would have shown her crossing the center lane. The quality and value of the video recording was validated by Officer Hammond. Its loss prevented Ms. Merriman and any fact finder from viewing the events as they actually occurred.

We also consider the evidence that served as the factual basis for the DUI charge. When the video recording was removed from consideration as evidence, the State's DUI evidence was reduced to Officer Hammond's testimony and possibly that of Sergeant Jones. According to Officer Hammond, Ms. Merriman admitted she had ingested a Valium and hydrocodone. Officer Hammond said he attempted to administer three field sobriety tests. He identified one test as the HGN but did not identify the remaining two tests.[11] Ms. Merriman was unable to perform one of the tests due to her health issues but presumably completed the remaining test. From all indications, Officer Hammond believed that Ms. Merriman had performed unsatisfactorily on the tests. The trial court anticipated that Sergeant Jones would corroborate this testimony, an observation that was not corrected by the State.

The evidence presented to the trial court was not atypical of that presented in DUI cases, but it was not overwhelming. Unlike the testimony offered in Ferguson, Officer Hammond did not testify as to any indicia of alcohol use, and no test results based on breath or blood analysis were available because Ms. Merriman's refused to submit to testing under the implied consent law. In reviewing the Ferguson considerations, we conclude that the video recording became more significant in light of the relative strength of the State's case.

---

[11] Due to the strict admissibility requirements for the HGN test, it is unclear whether the results would have been inadmissible at trial. See Murphy, 953 S.W.2d at 203. Without the HGN test results, the State's evidence relating to Ms. Merriman's performance on field sobriety tests was reduced to one unspecified test.

-17-

Our balancing of the Ferguson factors leads us to the conclusion that the loss of the video recording under the facts of this case deprived Ms. Merriman of her right to a fair trial.

## F. Remedy

We now review the trial court's remedy for the State's failure to preserve the video recording. We will not overturn the trial court's dismissal of Ms. Merriman's charges absent a finding that the trial court abused its discretion.

At the conclusion of the July 13, 2011 hearing, the trial court granted Ms. Merriman's motion to dismiss the indictment despite its finding that the case presented a "close call." The trial court specifically rejected the State's suggestion of the alternative remedy of the pattern jury instruction for missing evidence.[12] The court reiterated its opinion that the video recording was "very strong evidence . . . that would be needed for the jury to make the best determination they could without having to speculate." The trial court found that "the police had an obligation to maintain [the video recording] and they didn't and there is no good answer why."

Under Ferguson, the trial court is afforded wide discretion in fashioning a remedy when it concludes that a trial without the lost or destroyed evidence would not be fundamentally fair. Ferguson, 2 S.W.3d at 917. Ferguson did not establish separate factors to guide the trial court's choice of remedy. It is logical that a more severe remedy may be warranted when the conduct is egregious or the evidentiary value of the lost evidence is more significant. Thus, dismissal of an indictment will not always be the appropriate remedy for a Ferguson violation. See Thorne v. Dep't of Public Safety, 774 P.2d 1326, 1331 (Alaska 1989) (determining an appropriate sanction for failure to preserve evidence by looking to the culpability of the state, the importance of the evidence lost, and the evidence of guilt). As noted, the trial court was troubled by the unexplained loss of the video recording. More importantly in conducting Ferguson's balancing analysis, the trial court concluded that the

---

[12] Section 42.23 of the Tennessee Pattern Jury Instructions provides:

The State has a duty to gather, preserve, and produce at trial evidence which may possess exculpatory value. Such evidence must be of such a nature that the defendant would be unable to obtain comparable evidence through reasonably available means. The State has no duty to gather or indefinitely preserve evidence considered by a qualified person to have no exculpatory value, so that an as yet unknown defendant may later examine the evidence.

If, after considering all of the proof, you find that the State failed to gather or preserve evidence, the contents or qualities of which are an issue and the production of which would more probably than not be of benefit to the defendant, you may infer that the absent evidence would be favorable to the defendant.

video recording's significance was elevated due to the minimal remaining evidence. Nothing in the record indicates the trial court applied an incorrect standard or reached a decision that is against logic or reasoning. Recognizing that the remedy of dismissal of charges under Ferguson should not be imposed lightly, we nonetheless hold that the trial court did not abuse its discretion in dismissing the charges of driving under the influence, reckless endangerment, and reckless driving.

## III. Conclusion

We hold that under Ferguson, the standard of review of a trial court's determination as to whether a defendant was deprived of a fundamentally fair trial is de novo with no presumption of correctness. Deference should be given to the trial court's findings of fact, however, unless the evidence preponderates otherwise. A trial court's determination of the appropriate remedy for the State's failure to preserve the evidence is reviewed under an abuse of discretion standard. We affirm the trial court's dismissal of the charges of driving under the influence, reckless endangerment, and reckless driving. Costs of this appeal are taxed to the State of Tennessee.


_____
JANICE M. HOLDER, JUSTICE