IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
November 12, 2015 Session

**STATE OF TENNESSEE v. BRADY P. SMITHSON**

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-CR088233      Michael Binkley, Judge**

---

**No. M2015-00310-CCA-R3-CD – Filed April 18, 2016**

---

The appellant, State of Tennessee, appeals the Williamson County Circuit Court's granting the motion of the appellee, Brady P. Smithson, to dismiss an indictment for two counts of vehicular assault, a Class D felony. On appeal, the State contends that the trial court misapplied the factors in State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999). Based upon the oral arguments, the record, and the parties' briefs, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and CAMILLE R. MCMULLEN, JJ., joined.

Michael T. Fort, Franklin, Tennessee, for the appellee, Brady P. Smithson.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Kim R. Helper, District Attorney General; and Carlin Hess, Assistant District Attorney General, for the appellant, State of Tennessee.

**OPINION**

**I.  Factual Background**

This case relates to a single-car crash that occurred on March 8, 2014. In August 2014, the Williamson County Grand Jury indicted the appellee for one count of vehicular assault while under the influence of an intoxicant and one count of vehicular assault with an alcohol concentration of eight-hundredths of one percent (0.08%) or more, Class D felonies. Subsequently, the appellee filed a motion to dismiss the indictment on the basis

that the State failed to preserve potentially exculpatory evidence. Specifically, the State failed to preserve a video recorded at the crash scene.

The trial court held a hearing on the motion on November 18, 2014. At the hearing, Trooper Kent Peters testified that he was the custodian of records for the Tennessee Highway Patrol (THP). On March 8, 2014, the video camera in Trooper Randy McDonald's patrol car recorded footage at the scene of a wreck. The video was forty-two or forty-three minutes in length. However, the video was later deleted because the computer "purges itself." On cross-examination, Trooper Peters explained as follows:

> My Sergeant makes the videos for the attorneys generally. And the Trooper in the field, at a current event when he is finished[,] it gives him options before he shuts his camera off. If it is something that may be needed to mark, and he marks it if it is a significant event, like a DUI, a deadly crash, an arrest is made and he would mark it. But if a Trooper in the field didn't mark that properly then in six months I believe the computer will naturally purge itself to free up information so that it is not overloaded.

Trooper Peters acknowledged that the video in this case was not preserved because Trooper McDonald did not "mark" the video correctly.

Trooper McDonald testified that at 4:42 a.m. on March 8, 2014, he arrived at the scene of a "rollover" car crash on Horton Highway, near state route 840. A female, who was the owner and an occupant of the car, had been ejected and was being treated by paramedics. The appellee, who was another occupant, was "standing there" and was talking with Williamson County Sheriff's Deputy Justin Long. Trooper McDonald spoke with the appellee. He stated that the appellee "seemed intoxicated" and that the appellee said "something about marijuana, smoking marijuana." The appellee also "stated he was driving." Trooper McDonald acknowledged that the appellee had a head injury and that without the appellee's admission, he had no way of knowing who was the driver. He said the camera in his patrol car would have audio-recorded his questions to the appellee and the appellee's answers. The camera also would have video-recorded the appellee's admission, demeanor, and injuries. When Trooper McDonald returned to police headquarters, the video "automatically download[ed]" and was saved "for so long." However, the recording was not preserved beyond a certain amount of time because Trooper McDonald failed to "mark" the video as an arrest.

Trooper McDonald testified that he transported the appellee from the scene to the emergency room and that the appellee "confirmed then again that he was the driver." Trooper McDonald never saw the appellee walking along Horton Highway. However, Deputy Long told Trooper McDonald that the appellee had been walking northbound on the highway after the wreck. Trooper McDonald acknowledged that at the appellee's preliminary hearing, he testified that the appellee claimed the appellee did not know why he was walking north or where he was going.

Trooper McDonald testified that a volunteer firefighter had reported the crash to authorities and had reported seeing an individual walking north away from the wrecked car. The firefighter was gone, though, by the time Trooper McDonald arrived. Trooper McDonald acknowledged that at the appellee's preliminary hearing, he testified that he spoke with the firefighter at the scene. Trooper McDonald explained that he worked another car crash the very next day, that the same volunteer firefighter was present at the second wreck, and that he may have been confusing the two incidents. He stated that he did not remember if he spoke with the firefighter on March 8 and that "I'm getting more confused by the minute."

On cross-examination by the State, Trooper McDonald acknowledged that the female occupant of the car had serious, life-threatening injuries and that the appellee claimed he had been drinking vodka and smoking marijuana before the wreck. At one point, the appellee said he had been the only person in the car. The appellee smelled of alcohol and consented to having his blood drawn. Trooper McDonald charged the appellee with driving under the influence (DUI), a misdemeanor, and the State later indicted him for vehicular assault, a felony. Sometime after the wreck, the female occupant's family contacted Trooper McDonald and said "something about another driver." Trooper McDonald said he never saw the video recorded from his patrol car and that his loss of the video was "[a]n error, absolutely, yes." He acknowledged that he did not lose the video intentionally or try to conceal evidence.

On redirect examination, Trooper McDonald testified that he had no doubt that the appellee admitted to being the driver. The officer stated, "I can't put charges on somebody if I've got a doubt."

Chris Pope testified that he was a volunteer firefighter in Peytonsville. In the early morning hours of March 8, 2014, he was driving home from his job as a security guard. When he turned off route 840 onto Horton Highway, he saw someone walking northbound toward 840. Shortly thereafter, he saw that a fence had been knocked down on Horton Highway. A car was off the road to the left, and a female, who had been ejected from the car, was "raising up." Pope said that he pulled into a driveway and that the appellee walked toward his vehicle. Pope called for emergency medical personnel.

Pope testified that he was at the scene for twenty-five or thirty minutes and that he saw Trooper McDonald there. The appellee was "acting a little nervous" and was "pacing back and forth." Pope said he heard the appellee ask an officer "if the car that was wrecked was a [Camaro] or something like that because if that was a [Camaro] then that was his car." The wrecked car was not a Camaro. Pope said the appellee "had a scratch or two, behind his ear" and appeared to have a head injury. Pope saw damage to the wrecked car's windshield where someone's head appeared to have hit it, but the appellee's injuries were not consistent with the damage because the appellee "would have been in worse shape."

Pope testified that he told police officers he had seen "a third party walking north bound" and that he made clear the person he saw walking was not the appellee. A deputy drove northbound, trying to find the individual. The appellee may have told officers that he was walking northbound. However, the appellee was "pretty intoxicated and he wasn't . . . cooperating right." Pope did not know if the appellee's behavior was due to his injuries. A couple of days after the March 8 wreck, Pope was present with Trooper McDonald at another crash scene. He asked Trooper McDonald if he ever found the third party who was walking northbound, and Trooper McDonald said he was still investigating.

At the conclusion of Pope's testimony, the State moved to introduce into evidence the appellee's medical records, showing that he had a blood alcohol content of .221 and "indicat[ing] that he admitted to hospital staff that he was driving the vehicle." The records included an "Emergency Visit Note" authored by the appellee's treating physician. In the document, Dr. Stephen P. Ragle wrote, "19-year-old male presents by ambulance after a rollover MVC. Patient admits that he was driving but does not recall if he was restrained or what happened in the accident. The patient states he has no recollection of the accident at all."

At the conclusion of the hearing, the appellee claimed that the video was potentially exculpatory because it could show that he was incoherent after the wreck. The appellee argued that his incoherence was significant in that "[t]he Jury has to be able to assess his statement." As to the sufficiency of the evidence, the appellee noted that Trooper McDonald would testify about the alleged admission but that the defense had demonstrated that the trooper's motion hearing testimony was inconsistent with his preliminary hearing testimony and that he could not remember much about the March 8 events. The State advised the court that its evidence of the appellee's guilt was his statements but that "we have those through other means." The trial court stated that it would issue an order regarding the appellee's motion to dismiss within thirty days.

- 4 -

On November 20, 2014, the State filed a motion to reopen the proof. According to the motion, the State learned after the November 18 hearing that Deputy Long's in-car video camera had captured "the exact footage that allegedly was contained on Trooper McDonald's video footage." The trial court scheduled a hearing on the State's motion.

At the December 16, 2014 hearing, the trial court granted the State's motion to reopen. Deputy Long of the Williamson County Sheriff's Department testified that he was present at the scene of the wreck on March 8, 2014, and that his video camera recorded the appellee and police officers. The State played the video, which was approximately thirty minutes in length, for the trial court. In its order granting the appellee's motion to dismiss the indictment, the trial court summarized Deputy Long's videotape as follows:

> Once Deputy Long arrived on the accident scene, he initially placed Defendant in the back of his patrol car with the window cracked, instructing him to "Hollar if you need me." Deputy Long spoke to someone, telling them that Defendant is very drunk and he put him in the patrol car until he can deal with him.

> Mr. Pope informed the officers that Defendant was at the scene when Mr. Pope arrived on the scene.

> Officers are heard discussing which of the two people on the scene was the passenger and who was the driver. Someone stated that the driver is in the ambulance. Deputy Long stated that the passenger, i.e., Defendant, is in the back of his patrol car. An officer also stated that the driver's side of the vehicle is caved in and because of this, the driver had to be the girl [based on her injuries].

> Deputy Long proceeded back to his patrol car and got Defendant out of the vehicle. Deputy Long asked Defendant about his wallet and then asked him whether he was the driver or the passenger. After sitting on the ground, and being asked the question again, Defendant replied that he was the passenger.

> Someone, possibly Trooper McDonald, took Defendant away from the front of Deputy Long's patrol vehicle.

Someone, possibly Deputy Long, responded to someone, to the effect, "Nah, he was the passenger."

An officer asked Defendant about the identity of the injured female.

Defendant stated he was riding and she was driving.

An officer asked Defendant why he was walking down the road and he replied he was scared.

An officer is heard to comment that Defendant is so drunk.

An officer said to Defendant that he is out of it and is "[f***ed] up."

An officer asked defendant what he had taken and he replied he had been drinking.

Defendant asked if the vehicle is a '65 Mustang, because if so, it is his vehicle.

Defendant told an officer the female lives in Nolensville.

Mr. Pope related that it was not the Defendant that was walking down the road. Mr. Pope explained that there was someone else walking down the road.

Deputy Long left the scene and reported on his radio that there was a third person in a white jacket or white shirt. Deputy Long went to a nearby store and told the clerk that one of the people from the wreck down the road "disappeared" and asked the clerk to call if someone comes in with blood on them.

After the State played the video, defense counsel recalled Trooper McDonald to the stand. Trooper McDonald acknowledged that he never said the appellee claimed to be a passenger in the vehicle. Defense counsel asked the officer why he would omit such

important information from his testimony, and he answered, "I don't know. . . . [W]hat I recall is that he was the driver. He stated he was the driver." Trooper McDonald said he did not recall the appellee's telling him twice that the appellee was the passenger. Trooper McDonald acknowledged that his recollection of the events was poor. On cross-examination, Trooper McDonald also acknowledged that the appellee was "pretty out of it."

At the conclusion of Trooper McDonald's testimony, the trial court stated that it would take the matter under advisement. On February 12, 2015, the court filed an order granting the appellee's motion to dismiss the indictment pursuant to State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999). First, the trial court considered whether the State had a duty to preserve the evidence. The trial court noted that Deputy Long's video did not capture all of Trooper McDonald's conversations with the appellee and concluded that

> because Trooper McDonald's video may have shed light on Defendant's appearance and condition at the scene of the accident and it may have shed light on what Defendant and others told Trooper McDonald at the scene, the State had a duty to preserve the videotape as potentially exculpatory evidence.

Next, the court considered the degree of negligence involved. The court concluded that the appellee had failed to show that Trooper McDonald acted in bad faith in destroying the evidence. However, the court stated that it was "greatly disturbed" by the THP's lack of policy and procedural safeguards to prevent an officer from mistakenly failing to preserve the evidence. While finding that the loss of the video was due to negligence, the court notably stopped short of stating that the loss was due to simple negligence.

The court then considered the significance of the destroyed video and concluded that the video was "key evidence of Defendant's appearance, condition, and responses while Trooper McDonald questioned him regarding who was driving the vehicle. It is also key evidence regarding Trooper McDonald's investigation since he was the charging officer." The trial court noted that the only evidence the appellee was the driver was Trooper McDonald's testimony and the medical records. The trial court found that Deputy Long's video was not comparable to the lost video because the appellee never stated on Deputy Long's video that he was the driver. Thus, the court found that the lost video was significant because "it is more probative and reliable of the facts and circumstances leading Trooper McDonald to arrest and bring charges against Defendant as the driver of the vehicle."

Finally, the court considered the sufficiency of the other evidence, which included Trooper McDonald's testimony, Pope's testimony, the appellee's medical records, and Deputy Long's video. The court found that Trooper McDonald's testimony was "evasive, non-responsive, and vague," and that, based on the inconsistencies in his testimony, he was not credible. The trial court concluded that the loss of Trooper McDonald's video deprived the appellee of his right to a fair trial and found that the only appropriate remedy was dismissal of the indictment.

## II. Analysis

The State contends that the trial court erred by dismissing the indictment because "plentiful substitute evidence . . . aids the defense in attacking the State's theory" that the appellee was the driver, including the other occupant of the car who "presumably can say who was driving the car that night." The State also contends that the trial court failed "to give substantive consideration" to other evidence, such as Dr. Ragle's report, that supported the appellee's being the driver. Finally, the State argues that because the trial court did not know what proof would be developed at trial, the court's dismissal of the indictment was premature. The appellee argues that the trial court properly dismissed the indictment. Upon our de novo review, we conclude that the Ferguson factors support a dismissal of the indictment.

The Due Process Clause of the Fourteenth Amendment to the United States Constitution and article I, section 8 of the Tennessee Constitution afford every criminal defendant the right to a fair trial. See Johnson v. State, 38 S.W.3d 52, 55 (Tenn. 2001). As such, the State has a constitutional duty to furnish a defendant with exculpatory evidence pertaining to the defendant's guilt or innocence or to the potential punishment faced by a defendant. See Brady v. Maryland, 373 U.S. 83, 87 (1963).

In Ferguson, our supreme court addressed the issue of when a defendant is entitled to post-trial relief in the event the State has lost or destroyed evidence that was alleged to have been exculpatory. 2 S.W.3d at 915-18. The court explained that a reviewing court must first determine whether the State had a duty to preserve the lost or destroyed evidence. Id. at 917. Ordinarily, "the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim. P. 16, or other applicable law." Id. However,

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was

apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means."

Id. (quoting California v. Trombetta, 467 U.S. 479, 488-89 (1984)).

If the proof demonstrates the existence of a duty to preserve the evidence and further shows that the State has failed in that duty, a court must proceed with a balancing analysis involving consideration of the following factors:

> 1. The degree of negligence involved;
>
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
>
> 3. The sufficiency of the other evidence used at trial to support the conviction.

Id. (footnote omitted). If the court's consideration of these factors reveals that a trial without the missing evidence would lack fundamental fairness, the court may consider several options such as dismissing the charges or providing an appropriate jury instruction. Id. This court reviews the trial court's decision concerning the fundamental fairness of a trial conducted without the missing evidence under a de novo standard of review with no presumption of correctness. State v. Merriman, 410 S.W.3d 779, 792 (Tenn. 2013). The trial court's findings of fact, though, are entitled to substantial deference on appeal unless the evidence preponderates against them. Id. at 794.

In Merriman, our supreme court considered whether a trial court conducted a proper Ferguson analysis that resulted in the court's granting pretrial relief by dismissing an indictment. Of particular concern to the court in Merriman was a trial court's ability to assess the sufficiency of the evidence before trial. Id. at 786-88. Ultimately, the court concluded that a trial court could consider a pretrial motion to dismiss under Ferguson because "the Ferguson inquiry into the adequacy of the state's evidence is not a vehicle to adjudicate questions of fact involving the 'general issue of guilt or innocence.'" Id. at 787. Nevertheless, our supreme court cautioned that "the rules of criminal procedure may limit the circumstances under which a pre-trial motion to dismiss based on Ferguson may be granted. A defendant has no traditional procedural vehicle to challenge the sufficiency of the State's evidence prior to trial." Id.

Turning to the instant case, the State acknowledges that it had a duty to preserve the evidence. Therefore, we turn to the three Ferguson factors.

First, as to the degree of negligence involved, nothing indicates that Trooper McDonald intentionally destroyed the recording. To the contrary, he inadvertently failed to "mark" the video as an arrest so that it would be preserved beyond a certain amount of time. Although the trial court did not state the specific degree of negligence in this case, we find that Trooper McDonald's conduct amounts to simple negligence.

Regarding the second factor, the significance of the destroyed evidence, the lost video was significant because it recorded the appellee's alleged admission, which provided the factual basis for his charges. On the other hand, the video was not the only non-testimonial evidence that the appellee was the driver. Dr. Ragle's note provided that the appellee admitted to being the driver, although it's not clear whether the appellee himself or Trooper McDonald made that statement to the physician. In addition, while the trial court described the lost video as "key" evidence of the appellee's condition and appearance, Deputy Long's video is available to show the jury the appellee's incoherence and injuries. Nevertheless, the crux of the State's case is Trooper McDonald's testimony. If the appellee did not say on the video that he was the driver, then Trooper McDonald certainly would not testify at trial that the appellee made the admission. Thus, we conclude that the video would have played a significant role in the outcome of the appellee's case.

As to the third Ferguson factor, the sufficiency of the other evidence to support the convictions, we note that the State never gave any indication at the hearings or in this appeal that its case will include the female occupant's testimony. To the contrary, the State advised the trial court at the hearing on the motion to dismiss the indictment that its evidence consisted of the appellee's statements. Interestingly, the State suggests in its brief that the appellee call the female occupant to testify in his defense that she was the driver. Thus, the State's case will rely on Trooper McDonald's testimony and the appellee's medical records. However, defense counsel effectively impeached Trooper McDonald at the pretrial hearings, and the trial court found that the officer was not credible. Additionally, the admissibility of the appellee's statement in the medical records is questionable.[1] In short, the State's proof in this case is minimal. Therefore, in balancing the Ferguson factors, we conclude that the loss of the video would deprive the appellee of a fair trial.

As to the trial court's dismissal of the indictment, we review a trial court's chosen remedy for the denial of a defendant's right to a fundamentally fair trial under an abuse of

---

[1] In its order granting the appellee's motion to dismiss the indictment, the trial court noted that the appellee's admission to hospital personnel would be hearsay.

discretion standard.  <u>Id.</u> at 791-92.  In light of the balancing of the <u>Ferguson</u> factors, particularly the latter two factors, we conclude that the trial court did not abuse its discretion by dismissing the indictment.

### III.  Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the ruling of the trial court.

_____
NORMA MCGEE OGLE, JUDGE