# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### January 28, 2014 Session

## STATE OF TENNESSEE v. ANGELA K. PENDERGRASS

**Appeal from the Criminal Court for Hamilton County**
No. 273440    Don W. Poole, Judge

**No. E2013-01409-CCA-R3-CD-FILED-MARCH 25, 2014**

The defendant, Angela K. Pendergrass,[1] appeals her Hamilton County Criminal Court bench trial conviction of driving under the influence.  Discerning no error, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which NORMA MCGEE OGLE and JEFFREY S. BIVINS, JJ., joined.

Jerry H. Summers and Marya L. Schalk, Chattanooga, Tennessee, for the appellant, Angela K. Pendergrass.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; William H. Cox, III, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The Hamilton County grand jury charged the defendant with failure to yield and alternative counts of driving under the influence of an intoxicant ("DUI") and driving with a blood alcohol concentration of .08 percent or more ("DUI per se").  The trial court conducted a bench trial in June 2013.

---

[1]The defendant's name appears as Angela Kell or Angela Pendergrass Kell in various documents contained in the record, although nothing in the record indicates that the indictment, which says "Angela K. Pendergrass," was amended.  As is the policy of this court, we utilize the spelling contained in the indictment.

At trial, Chattanooga Police Department ("CPD") Sergeant David Allen testified that, on April 24, 2009, he responded to an automobile accident on Dayton Boulevard near Highway 27 in Hamilton County. Sergeant Allen arrived at the scene between 2:00 a.m. and 2:30 a.m. and discovered the defendant's vehicle in the middle of Dayton Boulevard. Sergeant Allen spoke with a witness at the scene, who informed him that the defendant had made a left turn into the path of an oncoming vehicle, which caused the accident. A witness also informed Sergeant Allen that the defendant had gone to a nearby Waffle House to use the restroom. When the defendant returned to her vehicle, she admitted to Sergeant Allen that she had been driving the vehicle and that she had been attempting to turn left into the Waffle House parking lot to use the restroom when the accident occurred. The defendant stated that she was returning home from The Palms and that "she consumed alcohol there." Sergeant Allen did not notice that the defendant's speech was slurred, but he did detect the "strong odor of an alcoholic intoxicant coming from her person." The defendant indicated to Sergeant Allen that she had consumed three alcoholic beverages, and she provided her receipt from The Palms, which "was around $35.00."

Believing the defendant to be under the influence of an intoxicant, Sergeant Allen asked the defendant to perform field sobriety tests. On the "walk-and-turn" test, Sergeant Allen asked the defendant to stand heel-to-toe on a line while he gave instructions, and he noted that the defendant broke her stance three times. While performing the test, the defendant "missed heel-to-toe I believe five times" and "stopped walking twice and she stepped off the line one time." Sergeant Allen stated that the defendant exhibited a total of four out of eight possible clues of intoxication on that test. During the one-leg stand test, the defendant "put her foot down I want to say three times, she swayed one time, she hopped three times and I believe she raised her arms twice," thus exhibiting all four of the possible clues of intoxication. Sergeant Allen then asked the defendant to recite the alphabet beginning with the letter D and continuing through the letter W. Although the defendant started correctly, she failed to stop at W and continued on to the letter Z. Sergeant Allen also requested that the defendant count backwards from 79 to 39. Sergeant Allen recalled that the defendant stopped at 61, skipped to 49, and "somewhere in the 30s [she] looked at me and asked me where she should stop and then continued counting." Through Sergeant Allen, the State introduced the video from Sergeant Allen's cruiser showing the defendant's performance of the field sobriety tests.

Because the defendant failed the field sobriety tests, Sergeant Allen placed her under arrest for DUI, read her the implied consent form, and asked her to submit to a breath-alcohol or blood test. The defendant signed the implied consent form and agreed to take the requested test. Sergeant Allen testified that he was certified to operate the Intoximeter EC/IR II ("breathalyser"), the type of machine employed at the CPD jail. When he transported the defendant to the jail, he observed her for the required 20 minutes and verified that the

defendant did not burp, regurgitate, or have anything in her mouth during that time period. Sergeant Allen testified that he began the observation period at 2:40 a.m. and that the defendant performed the breath test at 3:02 a.m. Sergeant Allen stated that he only administered one breath test to the defendant and that the single test produced a result of .17. Sergeant Allen confirmed that he administered the breath test in compliance with the Tennessee Bureau of Investigation ("TBI") standards and protocol.

On cross-examination, Sergeant Allen denied that the defendant blew into the breathalyser mouthpiece more than once. He acknowledged that, on a prior case, he failed to follow the proper protocol in administering a breathalyser test following a DUI arrest, but he was adamant that, in the defendant's case, she "only blew one time." Sergeant Allen denied having testified as an expert in DUI cases, although he did acknowledge that a Chattanooga general sessions court judge once referred to him as "an expert in DUI." On the basis of Sergeant Allen's breathalyser training, defense counsel attempted to cross-examine him "as an expert going into matters such as authoritative treatises and so forth." The trial court denied the defendant's request, stating that the court "ha[d] not heard any indication that he is an expert in any field other than you asked him something about" the general sessions court judge's comment.

TBI Special Agent and forensic scientist Dave Ferguson testified that he is responsible for maintaining, certifying, and calibrating the breath-alcohol instruments in East Tennessee, including those in Hamilton County. In addition, Agent Ferguson is responsible for certifying East Tennessee law enforcement officers on the operation of the breathalyser.

Testifying as an expert in the operation and maintenance of the breathalyser, Agent Ferguson stated that he initially certified the breathalyser used in the instant case on July 8, 2005. He again certified the breathalyser on March 4, 2009, and he determined that the machine was working properly and that no calibration was necessary. He returned on June 2, 2009, and performed the same testing, again issuing the appropriate certification. Agent Ferguson confirmed that, if there had been any problems with the breathalyser, he would not have certified its operation. Agent Ferguson examined the test strip from the defendant's April 24, 2009 breath test, and he stated that, based on his certification of the breathalyser in both March 2009 and June 2009, the machine was working properly. He explained that "if it is not working correctly, it will get what is called an abort sequence, whether it be mouth alcohol, whether it be insufficient sample."

On cross-examination, Agent Ferguson acknowledged that Tennessee is one of only 11 states conducting a single breath-alcohol test on a DUI suspect.

Based on this evidence, the trial court made the following findings:

I have considered the testimony of David Allen, who I find to be a credible witness, that an accident did occur. [The defendant] did agree that an accident occurred, that she was driving the vehicle in question. There was at least proof that she turned in front of the other driver. There was an accident, that proof was presented.

In regard to failure to yield, that proof is there.

In regard to Count 2, the driving itself and all the considerations, I give great weight, I will say this, in regard to the field sobriety tests, the walk-and-turn and the one-leg stand, quite frankly, I give great weight to those tests and I thought she did actually poorer on those tests than she did the other ones. The reciting the alphabet and counting backwards, I only consider in regard to the observations of the officer and the trier of fact as to how she did. She did not [do] well but all right in regard to those two tests. But just the observation of her I don't think it requires expert proof in regard to those two matters.

In regard to the two counts, specifically Count 2, in regard to the driving and in regard to the test that I saw and certainly even considering the blood alcohol content in regard to Count 2, I find that she is guilty in Count 2 of driving under the influence. I find that she is guilty in Count 3 of driving under the influence per se. That Count 2 will merge into Count 3, so there will be one finding of guilt in regard to driving under the influence.

Do you all want to be heard in regard to punishment at all? I will find her not guilty of the failure to yield.

The trial court imposed an effective sentence of 11 months and 29 days to be suspended after the service of 48 hours' incarceration with credit for one day served. In addition, the trial court revoked the defendant's driver's license for one year and ordered the defendant to complete 3 days of public service, attend DUI school, and pay a fine of $465 plus court costs.

Following the denial of her timely but unsuccessful motion for new trial, the defendant filed a timely notice of appeal. In this appeal, the defendant contends that the State's failure to preserve recordings of her preliminary hearings violated her due process

-4-

rights, that the trial court erred by denying the defendant's motion to dismiss on the basis of the State's failure to preserve certain evidence, that the trial court's admission of the breathalyser test results violated the Confrontation Clause, that the trial court erred by denying the defendant the right to cross-examine Sergeant Allen as an expert, that the evidence adduced at trial was insufficient to sustain the defendant's conviction of DUI, and that the cumulative effect of these errors prevented the defendant from receiving a fair trial. We consider each claim in turn.

## *I. Preliminary Hearings*

The defendant first contends that the State's failure to preserve audio recordings of her two preliminary hearings violated her due process rights. The State responds that the appropriate remedy for failure to record a preliminary hearing is simply a new preliminary hearing, which remedy was refused by the defendant.

The defendant's first preliminary hearing was conducted on July 14, 2009, in general sessions court. Following the return of the indictment against the defendant in September of that year, it was discovered that the recording had been erased due to an unspecified error. On December 17, 2009, the trial court, apparently in response to the defendant's motion, remanded the case to general sessions court for a second preliminary hearing, which hearing was held on March 2, 2010. The defendant provided the recording of that hearing to a court reporter, and the court reporter subsequently informed the defendant that portions of the recording were inaudible. The defendant then filed a motion to dismiss the indictment and/or remand the case for a third preliminary hearing. Although no order is found in the record, the defendant contends, and the State does not contest, that the trial court remanded the case for a third preliminary hearing, and both parties agree that the third preliminary hearing was never held.

The defendant then filed two separate motions to dismiss the indictment, contending that, among other things, another preliminary hearing would violate her right to due process. In subsequent motion hearings, the defendant made it clear that she did not wish to pursue a third preliminary hearing, even when the trial court offered such a remedy. The trial court denied the defendant's request to dismiss the indictment for failure to preserve the preliminary hearing transcripts, finding that "the failure to preserve two preliminary hearings does not warrant dismissal of the indictment, only a third preliminary hearing." The court surmised that the defendant's reason for not seeking a third preliminary hearing was due to her anticipation that Sergeant Allen's testimony would not be favorable to her.

Tennessee Rule of Criminal Procedure 5.1 addresses, among other things, the defendant's access to a preliminary hearing recording. The rule provides, in pertinent part,

as follows:

> The evidence of the witnesses does not have to be reduced to writing by the magistrate, or under the magistrate's direction, and signed by the respective witnesses; but the proceedings shall be preserved by electronic recording or its equivalent. If the defendant is subsequently indicted, such recording shall be made available to the defendant or defense counsel so they may listen to the recording in order to be apprised of the evidence introduced in the preliminary examination. *Where the recording is no longer available or is substantially inaudible, the trial court shall order a new preliminary hearing upon motion of the defendant filed not more than 60 days following arraignment. The indictment shall not be dismissed while the new preliminary hearing is pending. . . .*

Tenn. R. Crim. P. 5.1(a)(3) (emphasis added). The italicized portion above was added to the rule in 2008, and the Advisory Commission Comment to the 2008 amendment states that "[t]he amendments provide remedies when the recording of a preliminary hearing is lost or damaged." *See id.*, Advisory Comm'n Comments. Thus, it is clear from the rule that a defendant's remedy for a lost or damaged recording is merely another preliminary hearing and not, as the defendant suggests, dismissal of her indictment. Moreover, the rule provides that the trial court will order a new preliminary hearing "upon motion of the defendant," making it clear that a preliminary hearing is not required but rather will be granted only upon request of the defendant.

The defendant relies on *State v. Carter*, 970 S.W.2d 509 (Tenn. Crim. App. 1997), and *State v. Robert C. Copas*, No. M1999-00841-CCA-R3-CD (Tenn. Crim. App., Nashville, Sept. 15, 2000), in support of her position that dismissal of the indictment was appropriate. Indeed, this court stated in *Robert C. Copas*, in reliance upon *Carter*, that "[t]he proper remedy when an electronic recording of a preliminary hearing is lost or unavailable would be to request the trial court to dismiss the indictment and remand to the General Sessions Court for a second preliminary hearing." *Robert C. Copas*, slip op. at 2*; see also Carter*, 970 S.W.2d at 512. The defendant fails to notice, however, that both of these cases were decided prior to the amendment of Rule 5.1(a)(3).

Although Rule 5.1 does not address the procedure to be followed when a second preliminary hearing recording is lost or damaged, it stands to reason that the remedy would be the same: the defendant must move for another preliminary hearing. In the instant

-6-

case, the defendant chose not to pursue a third preliminary hearing, thus waiving the remedy available to her. She cannot now be heard to complain on appeal. Tenn. R. App. P. 36(b) ("Nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error."). Thus, the defendant has waived our consideration of this issue.

## II. Ferguson Issues

The defendant next contends that the trial court erred by denying her motions to dismiss based on both the State's failure to preserve the jail video showing the defendant while present in the booking area of the jail and the State's failure to record the defendant during the administration of the breath test at the jail. The defendant posits that these failures violated her due process rights as outlined in *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999).

In *State v. Ferguson*, our supreme court "explained that the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial." *State v. Merriman*, 410 S.W.3d 779, 784 (Tenn. 2013) (citing *State v. Ferguson*, 2 S.W.3d 912, 915-16 (1999)). The court observed that "the due process required under the Tennessee Constitution was broader than the due process required under the United States Constitution" and rejected the "bad faith" analysis espoused by the United States Supreme Court, *Merriman*, 410 S.W.3d at 784 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988) (holding "that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law")), in favor of "a balancing approach in which bad faith is but one of the factors to be considered in determining whether the lost or destroyed evidence will deprive a defendant of a fundamentally fair trial," *Merriman*, 410 S.W.3d at 785. The supreme court "observed that fundamental fairness, as an element of due process, requires a review of the entire record to evaluate the effect of the State's failure to preserve evidence." *Id.* at 784-85 (citing *Ferguson*, 2 S.W.3d at 914, 917).

To facilitate this "balancing approach," our supreme court ruled that the trial court must first "determine whether the State had a duty to preserve the evidence," *Merriman*, 410 S.W.3d at 785, and observed that the State's duty to preserve was "limited to constitutionally material evidence." *Id.* The court held that to be "constitutionally material," the evidence "must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.* (citing *Ferguson*, 2 S.W.3d at 915, 918). "If the trial court determines that the State had a duty to preserve the evidence, the court must determine if the State failed in its duty." *Merriman*, 410 S.W.3d at 785 (citing *Ferguson*, 2 S.W.3d at 917). If the trial

court concludes that the State lost or destroyed evidence that it had a duty to preserve, the trial court must then consider three factors to determine the appropriate remedy for the State's failure:

> "(1) [t]he degree of negligence involved;
> (2) [t]he significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
> (3) [t]he sufficiency of the other evidence used at trial to support the conviction."

*Merriman*, 410 S.W.3d at 785 (quoting *Ferguson*, 2 S.W.3d at 917). "If the trial court concludes that a trial would be fundamentally unfair without the missing evidence, the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Merriman*, 410 S.W.3d at 785-86.

We review the trial court's decision concerning the fundamental fairness of a trial conducted without the missing evidence under a de novo standard of review. *Id.* at 791 ("Because the application of *Ferguson* . . . presents a constitutional issue, we will apply a de novo standard of review to the trial court's decision concerning the fundamental fairness of the trial."). The trial court's choice of remedy, however, will not be overturned on appeal absent a showing that the trial court abused its discretion. *Id.* at 792 ("Thus, when the chosen remedy is consistent with the findings made by the trial court utilizing the Ferguson considerations, we will not overrule that choice on appeal.").

With respect to the jail video showing the defendant during her time in the booking area, the defendant, at a hearing on her motion to dismiss, submitted proof that the Hamilton County Sheriff's Department ("HCSD") has a policy of maintaining such videos for 30 to 45 days, after which time the videos are recorded over and destroyed. Because the defendant was unaware of this policy, her request to view the jail video was made too late. The defendant admits in her brief before this court, however, that the trial court never ruled on her motion to dismiss with respect to this particular jail video. Because the defendant failed to secure a ruling from the court and failed to raise the issue at trial, she cannot now complain that she was harmed by the trial court's failure to rule on the motion. "[A] party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error" is not entitled to relief on appeal. Tenn. R. App. P. 36(a).

In her second *Ferguson* claim, the defendant argues that the trial court should have granted her motion to dismiss based on the jail's failure to record the defendant while she was taking the breath test. At the hearing on her motion to dismiss, the defendant submitted proof that a video camera in the jail's breathalyser room was not operational and that the HCSD chose not to activate many of their cameras because of the prohibitive operational costs.

The defendant's reliance on *Ferguson* in this instance is misplaced. *Ferguson* applies to the loss or destruction of evidence. It does not require the *creation* of evidence. "[T]his court has repeatedly refused to grant *Ferguson* relief when there was no proof that the alleged evidence existed." *State v. Randall S. Sparks*, No. M2005-02436-CCA-R3-CD, slip op. at 6 (Tenn. Crim. App., Nashville, Aug. 4, 2006) (citing *State v. Timothy D. Prince*, No. M2004-01262-CCA-R3-CD, slip op. at 5 (Tenn. Crim. App., Nashville, May 3, 2005); *State v. Linda H. Overholt*, No. E2003-01881-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Knoxville, Jan. 21, 2005), *perm. app. denied* (Tenn. May 23, 2005); *State v. George R. Croft*, No. W2001-00134-CCA-R3-CD, slip op. at 7 (Tenn. Crim. App., Jackson, Nov. 20, 2002)). Because a recording of the defendant's performing the breath test never existed, she is not entitled to relief.

### III. Confrontation Clause

The defendant claims that the trial court erred by admitting the results of the breathalyser test because the State "failed to bring in the analyst who certified and tested the solutions used to calibrate the [breathalyser] in violation of the Confrontation Clause." The State counters that the defendant has failed to prove a Confrontation Clause violation. We agree with the State.

During Agent Ferguson's direct examination, he made reference to two certificates of analysis from Guth Laboratories, which certificates certified the alcohol reference solution for the breathalyser. These documents were not entered into evidence by the State, in keeping with Tennessee Rule of Evidence 703 ("If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence" and "shall not be disclosed to the jury by the proponent of the opinion or inference . . . ."). At the conclusion of the State's direct examination but prior to beginning his cross-examination, defense counsel requested that the two certificates be admitted into evidence, and defense counsel then proceeded to question Agent Ferguson extensively about the two certificates and his knowledge of Guth Laboratories' standards and protocol.

The Confrontation Clause guarantees criminal defendants the right to confront

witnesses *against* them. *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In the instant case, the defendant chose to admit the evidence about which she now complains, and, as such, no violation of the Confrontation Clause has occurred. "It is well-settled that a litigant 'will not be permitted to take advantage of errors which he himself committed, or invited, or induced the trial court to commit, or which were the natural consequence of his own neglect or misconduct.'" *State v. Robinson*, 146 S.W.3d 469, 493 (Tenn. 2004) (quoting *Norris v. Richards*, 246 S.W.2d 81, 85 (Tenn. 1952)). The defendant is not entitled to relief on this issue.

## *IV. Expert Testimony*

Next, the defendant argues that the trial court erred by refusing to allow defense counsel to question Sergeant Allen as a DUI expert so that counsel could attempt to impeach him with the use of DUI treatises. We disagree.

The admissibility of expert testimony is governed by Rules 702 and 703 of the Tennessee Rules of Evidence. *See generally McDaniel v. CSX Transp., Inc.*, 955 S.W.2d 257 (Tenn. 1997). Rule 702 addresses the need for expert testimony and the qualifications of the expert: "If scientific, technical, or other specialized knowledge will substantially assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." Tenn. R. Evid. 702. Rule 703 focuses on the reliability of expert opinion testimony. Generally, the admissibility of expert testimony is a matter entrusted to the sound discretion of the trial court, and there can be no reversal on appeal absent clear abuse of that discretion. *See State v. Scott*, 275 S.W.3d 395, 404 (Tenn. 2010); *State v. Copeland*, 226 S.W.3d 287, 301 (Tenn. 2007). "A trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Scott*, 275 S.W.3d at 404 (citing *Konvalinka v. Chattanooga-Hamilton County Hosp. Auth.*, 249 S.W.3d 346, 358 (Tenn. 2008)).

In the instant case, the defendant's sole basis for attempting to treat Sergeant Allen as an expert was the alleged statement of a general sessions court judge who once referred to Sergeant Allen as "an expert in DUI." Clearly, this anecdotal reference hardly qualifies Sergeant Allen as an expert. Moreover, this court has repeatedly held that "police officers generally do not need to be qualified as expert witnesses in order to testify about their administration and interpretation of field sobriety tests." *State v. Ronnie Wayne Blair*, No. M2009-01987-CCA-R3-CD, slip op. at 11 (Tenn. Crim. App., Nashville, Mar. 3, 2011), *perm. app. denied* (Tenn. July 20, 2011) (citing *State v. Everett D. Robinson*, No. W1999-01348-CCA-R3-CD, slip op. at 4 (Tenn. Crim. App., Jackson, Apr. 7, 2000) (citing *State v.*

*Christopher R. Hicks*, No. 03C01-9602-CC-00064, slip op. at 3 (Tenn. Crim. App., Knoxville, May 13, 1997))). Although Sergeant Allen did, upon questioning by the defendant, offer some testimony about his knowledge of the history of and studies on field sobriety tests, it did not rise to the level of expertise, and, thus, the trial court did not abuse its discretion by refusing to qualify Sergeant Allen as an expert witness.

## *V. Sufficiency*

The defendant contends that the evidence is insufficient to support her conviction of DUI as charged in Count 2 of the indictment. We disagree.

We review the defendant's claim of insufficient evidence mindful that our standard of review is whether, after considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 324 (1979); *State v. Winters*, 137 S.W.3d 641, 654 (Tenn. Crim. App. 2003). This standard applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011).

When examining the sufficiency of the evidence, this court should neither re-weigh the evidence nor substitute its inferences for those drawn by the trier of fact. *Id.* Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Significantly, this court must afford the State the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *Id.*

As charged in this case,

It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while:

(1) Under the influence of any intoxicant, marijuana, controlled substance, drug, substance affecting the central nervous system or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of himself which he would otherwise possess[.]

-11-

T.C.A. § 55-10-401(a)(1).

Viewed in the light most favorable to the State, the evidence adduced at trial established that the defendant consumed at least three alcoholic beverages before getting into her car to drive home. While attempting to turn into a Waffle House parking lot, the defendant's vehicle collided with another automobile. When Sergeant Allen arrived at the scene, the defendant had abandoned her vehicle to use the Waffle House restroom, and, when she returned to her vehicle, Sergeant Allen detected the strong smell of an alcoholic beverage on the defendant's person. The defendant failed the field sobriety tests, and, most significantly, the results of the breathalyser test revealed the defendant's level of intoxication to be more than twice that of the legal limit. The evidence of the defendant's impairment presented by the State was more than sufficient to support her conviction of DUI.

### VI.  Cumulative Error

Finally, the defendant contends that the cumulative effect of the errors of the trial court deprived her of a fair trial. Having considered each of the defendant's issues on appeal and concluded that the defendant is not entitled to relief for any, we need not consider the cumulative effect of the alleged errors. *State v. Hester*, 324 S.W.3d 1, 77 (Tenn. 2010) ("To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed.").

### VII.  Conclusion

The defendant has failed to establish entitlement to relief on any of the issues presented. Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE

-12-