IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
April 22, 2015 Session

**STATE OF TENNESSEE v. KATHY L. BARTLETT**

**Appeal from the Circuit Court for Williamson County**
**No. I-CR106759     Michael W. Binkley, Judge**

**No. M2014-01530-CCA-R3-CD – Filed July 17, 2015**

A Williamson County grand jury indicted appellee, Kathy L. Bartlett, for driving under the influence of an intoxicant. The charge was dismissed pretrial after the trial court granted appellee's motion to dismiss. The State appeals the trial court's granting of the motion and argues that the trial court misapplied the law relating to lost or destroyed evidence. Following a thorough review of the record, we reverse the ruling of the trial court, reinstate the indictment, and remand for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; Andrew C. Coulam, Assistant Attorney General; Kim R. Helper, District Attorney General; and Carlin Charles Hess, Assistant District Attorney General, for the appellant, State of Tennessee.

Rob McKinney (at hearing and on appeal); and Brittney S. Hollis (on appeal), Nashville, Tennessee, for the appellee, Kathy L. Bartlett.

**OPINION**

This case concerns the traffic stop of appellee after an officer observed her speeding and the subsequent loss of the audio-visual recording ("the recording") depicting the stop. Appellee was indicted for driving under the influence of an intoxicant ("DUI"). Due to the loss of the recording, appellee filed a motion to dismiss on May 13, 2013. The trial court held an evidentiary hearing on the motion on May 20, 2013.

I. Facts from the Hearing

On March 29, 2012, at approximately 11:57 p.m., Elliot Hamm, a patrol officer with the Brentwood Police Department, was driving southbound on Wilson Pike in Williamson County when he noticed a Honda Fit traveling northbound. Officer Hamm visually estimated that the vehicle was traveling at a rate of speed over fifty miles per hour in an area that had a posted speed limit of forty miles per hour. Officer Hamm used his radar gun, which he had been trained to use, to confirm his suspicion. The radar gun indicated that the Honda Fit was traveling at fifty-six miles per hour.

Officer Hamm initiated a traffic stop, and when he approached appellee (the driver), he smelled the odor of alcohol emanating from inside the vehicle. According to Officer Hamm, appellee also had "bloodshot and watery eyes." When Officer Hamm asked appellee about the smell, she responded that she had consumed two glasses of wine earlier in the evening. Officer Hamm testified that he had appellee perform two field sobriety tests, both of which she performed poorly. After Officer Hamm arrested appellee, she refused to submit to a blood-alcohol test. During transport to the jail, appellee stated, "'What am I gonna tell my friends? Come pick my drunk a** up.'"

Officer Hamm explained that his car was equipped with an in-car dash camera and a camera and microphone in the back of the car that records video and audio from the back of the car during transport. Officer Hamm viewed the recording in his car immediately after the arrest and then submitted it wirelessly to the police station's server. However, when Officer Hamm attempted to retrieve the recording, he was told that it was unavailable.

William Reape, the evidence custodian for the Brentwood Police Department, explained that the police cars capture recordings digitally and that when the officer arrives at the police department, the officer wirelessly transmits the footage from the patrol car to the server. Mr. Reape explained that he searched for the recording of appellee's stop but was unable to find it. He even contacted the software vendor but was unable to locate the recording. Mr. Reape postulated that a technical error occurred and that the recording of appellee's stop did not transmit properly.

After questioning by the State and appellee had concluded, the trial court asked the witness about the reasons behind prior lost recordings. Mr. Reape explained that one of the police department's servers had been failing, so information was moved from the failing server to a new server. By doing so, some files were corrupted. Mr. Reape explained that at the time, only six recordings out of thousands were missing and that the problem seemed to be isolated to March 2012. Upon questioning by the court regarding whether the recording of appellee's stop was "forever lost," Mr. Reape hypothesized that

a recovery specialist might be able to "locate something on an old server somewhere," although he stated that the failed server had been discarded.

Following the hearing, the court continued the matter until our supreme court filed its decision in *State v. Merriman*, 410 S.W.3d 779 (Tenn. 2013). On July 31, 2014, the trial court filed a written memorandum and order granting appellee's motion to dismiss due to the lost recording. The State now appeals the trial court's decision.

## II. Analysis

The State argues that the trial court erred in dismissing appellee's case because the trial court misapplied the factors from *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999). Appellee responds that the trial court properly granted her motion to dismiss.

Our supreme court has stated that "the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial." *Merriman*, 410 S.W.3d at 784 (citing *Ferguson,* 2 S.W.3d at 915-16). The court "promulgate[d] . . . an analysis in which the critical inquiry is: Whether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair?" *Ferguson,* 2 S.W.3d at 914. The initial inquiry in this analysis is whether the State had a duty to preserve the evidence. *Merriman*, 410 S.W.3d at 785. Our supreme court has explained that the State has a "general duty to preserve all evidence subject to discovery and inspection under Rule 16 of the Tennessee Rules of Criminal Procedure and other applicable law, including *Brady v. Maryland* . . . ." *Id*. "Although difficult to define, the State's duty to preserve evidence is limited to constitutionally material evidence described as 'evidence that might be expected to play a significant role in the suspect's defense.'" *Id*. (quoting *Ferguson,* 2 S.W.3d at 917). To satisfy this standard, "the evidence must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. (citing *Ferguson,* 2 S.W.3d at 915, 918).

If the proof demonstrates that the State had a duty to preserve the evidence and that the State failed in that duty, the analysis then shifts to a consideration of the following factors in deciding the consequences of the State's breach:

(1) The degree of negligence involved;

(2) The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and

(3) The sufficiency of the other evidence used at trial to support the conviction.

*Ferguson,* 2 S.W.3d at 917. We review the trial court's determination of whether a defendant could receive a fair trial de novo with no presumption of correctness. *Merriman*, 410 S.W.3d at 792. If, after due consideration of the three *Ferguson* factors, the trial court concludes that a trial without the missing or destroyed evidence would not be fundamentally fair, the court may order dismissal of the charges. *Ferguson,* 2 S.W.3d at 917. "Dismissal is, however, but one of the trial judge's options." *Id.* The trial court may craft a special jury instruction or grant other appropriate remedies. *Id.* We review the trial court's choice of remedy for abuse of discretion. *Merriman*, 410 S.W.3d at 792.

Neither the State nor appellee dispute that the State had a duty to preserve the recording. Therefore, our analysis will be confined to an examination of the three *Ferguson* factors.

The first factor requires us to consider the degree of negligence involved in the loss or destruction of the evidence. The supreme court in *Ferguson* stated that "[t]his factor presumes negligence in the loss or destruction of the evidence. Should the proof show bad faith, the trial judge may consider such action as may be necessary to protect the defendant's fair trial rights." *Ferguson,* 2 S.W.3d at 917 n.10. Both parties agree that the Brentwood Police Department engaged in simple negligence. It is also clear from the record that the police department did not act with bad faith,[1] but rather the loss was a result of simple negligence. Mr. Reape testified that the loss was most likely a product of a technical glitch in the wireless transmission of the recording from the police car to the department's server. Mr. Reape also testified that six prior recordings had been corrupted during a server transfer in March 2012. There was no nefarious or dishonest intent in these technical glitches; therefore, the loss amounted to simple negligence.

The second *Ferguson* factor focuses on the significance of the lost evidence. *Ferguson,* 2 S.W.3d at 918. Our supreme court construed this factor in depth in its opinion in *State v. Merriman*. In so doing, the court cautioned against reducing a case to a credibility contest between the arresting officer and the defendant when there is no secondary or substitute evidence available. *Merriman*, 410 S.W.3d at 794. While it is clear from the record that the lost recording would have captured appellee's performance on the field sobriety tests, it is unclear if the recording captured appellee's subsequent statement from the back seat of the patrol car, in which she stated, "'What am I gonna tell my friends? Come pick my drunk a** up,'" because while Officer Hamm testified that

---

[1] Bad faith is defined as "[d]ishonesty of belief, purpose, or motive." Black's Law Dictionary (10th ed. 2014).

his car was equipped with a camera and microphone in the back of his car, he did not testify that this particular statement was captured by the lost recording.

However, even assuming that the lost recording would have been probative as to appellee's performance on her field sobriety tests and her statements in the back of the police car during transport, this was not the only evidence offered of appellee's intoxication. Officer Hamm testified that upon approaching appellee's vehicle, he detected the odor of alcohol and observed that appellee's eyes were bloodshot and watery, specifically distinguishing this case from *State v. Merriman*, in which the only evidence of guilt was the defendant's veering into oncoming lanes of traffic and failing field sobriety tests. Therefore, while the recording would have been probative of the appellee's physical state on the night of her arrest, it did not depict or portray every item of the State's inculpatory evidence. For example, as stated above, in *Merriman*, in which our supreme court determined that the defendant would not receive a fair trial absent the lost evidence, the only evidence of guilt was the defendant's veering into oncoming lanes of traffic and failing field sobriety tests, both of which were captured by the lost recording. However, in this case, the State's case rested on: (1) Officer Hamm's smelling the odor of alcohol; (2) appellant's admitting that she had consumed alcohol earlier in the evening; (3) Officer Hamm's observing appellee's bloodshot and watery eyes, (4) appellee's performing poorly on field sobriety tests, and (5) appellee's stating, "'What am I gonna tell my friends? Come pick my drunk a** up,'" while in the back seat of the patrol car. While some of this evidence would have been shown on the recording, other evidence, like Officer Hamm's smelling alcohol, would not have been depicted. We also note that unlike in *Merriman*, in which the video depicted the defendant's veering into oncoming lanes, appellant's stop was the result of speeding, which would not have been reflected on the lost recording. While we recognize that *Merriman* cautioned against reducing a case to a credibility determination between the arresting officer and the defendant, we also recognize that there was substantially more inculpatory secondary evidence presented in this case than in *Merriman*; thus, the probative value of the lost recording is diminished in comparison. Therefore, although the recording was probative, its significance is limited due to supporting secondary evidence.

The final *Ferguson* factor addresses the sufficiency of the other evidence the State intended to use at trial to support the conviction. Without the recording, the State's evidence was Officer Hamm's testimony that when he approached appellee's vehicle he smelled the odor of alcohol and observed appellee's bloodshot and watery eyes. Appellee told Officer Hamm that she had consumed wine earlier in the evening. There is no blood-alcohol evidence because appellee refused to submit to a blood-alcohol test. Officer Hamm testified that appellee performed poorly on two field sobriety tests and that during transport, appellee said, "'What am I gonna tell my friends? Come pick my drunk

a** up.'" We conclude that this evidence, as presented at the pre-trial hearing, was sufficient to support a conviction for DUI, even without the lost recording.[2]

Based on the above analysis and our balancing of the *Ferguson* factors, we conclude that appellee can receive a fundamentally fair trial without the missing recording. We surmise that to conclude otherwise would construe *Merriman* as requiring dismissal any time the State, through simple negligence, loses a recording of a stop in which the only witnesses are the arresting officer and the defendant; we conclude that based on the multi-factored analysis espoused in *Merriman*, our supreme court did not intend such a result, and we refuse to adopt such a narrow interpretation of *Merriman*.

## CONCLUSION

Based upon our review of the record, the arguments of the parties, and the applicable law, we reverse the ruling of the trial court, reinstate the indictment, and remand for further proceedings consistent with this opinion.

_____
ROGER A. PAGE, JUDGE

---

[2] We make this determination in consideration of the following directive from the supreme court:

> We caution, however, that a trial court conducting a Ferguson analysis must assess the sufficiency of the State's evidence while being mindful that this assessment is not the equivalent of determining the defendant's guilt or innocence beyond a reasonable doubt. Again, *Ferguson's* inquiry into the sufficiency of the State's evidence provides context to the lost or destroyed evidence, allowing the trial court to weigh the significance of the lost evidence in light of the other evidence and to determine an appropriate remedy, if one is required.

*Merriman*, 410 S.W.3d at 789-90; *see State v. Clifford Edward Clark, alias*, No. E2009-01795-CCA-R3-CD, slip op. at 22 (Tenn. Crim. App. Oct. 24, 2011).