IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 27, 2021 Session

## STATE OF TENNESSEE v. RANDAL LEDON TATE

**Appeal from the Criminal Court for Knox County**
No. 111708   Steven Wayne Sword, Judge

_____

**No. E2021-00217-CCA-R3-CD**

_____

Defendant, Randal Ledon Tate, was convicted by a jury of possession with intent to sell less than fifteen grams of heroin within 1,000 feet of a school (count 1), possession with intent to deliver less than fifteen grams of heroin within 1,000 feet of a school (count 2), simple possession of Alprazolam ("Xanax") (count 3), possession with intent to deliver Xanax within 1000 feet of a school (count 4), driving without a license (count 5), criminal impersonation (count 6), violation of the financial responsibility law (count 7), violation of the registration law (count 8), and driving a motor vehicle without operational taillights. (count 9). The trial court merged count 2 into count 1 and count 3 into count 4 and imposed an effective fifteen-year sentence as a Range I offender to be served in confinement. On appeal, Defendant argues: that the evidence was insufficient to support his convictions for possession of Xanax and heroin with intent to sell or deliver; that the trial court erred by admitting text messages about prior drugs sales; and that the trial court erred by denying his motion to dismiss based on an alleged *Ferguson* violation. After hearing oral arguments, and following a review of the entire record and the briefs of the parties, we affirm the judgments of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed

JILL BARTEE AYERS, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and CAMILLE R. MCMULLEN, JJ., joined.

Joshua Hedrick, Knoxville, Tennessee, for the appellant, Randal Ledon Tate.

Herbert H. Slatery III, Attorney General and Reporter; Katherine C. Redding, Senior Assistant Attorney General; Charme P. Allen District Attorney General; and Kenneth Irvine, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

# Factual and Procedural Background

This case arises from a traffic stop during which Defendant had no form of identification, gave a false name and Social Security number to the officer, and was driving a vehicle on which the license plate did not match the vehicle. During a pat-down search, Defendant was found to be in possession of a Xanax pill and a drug dog alerted on the presence of narcotics in Defendant's vehicle, although none were found in the vehicle. After Defendant was arrested and taken to the Knox County Detention Facility, he was discovered to be in possession of a green Crown Royal bag containing Xanax and heroin.

*404(b) Hearing*

At the 404(b) hearing prior to trial, Defendant argued that text messages downloaded from his cell phone should be excluded because they were irrelevant, more prejudicial than probative, and to the extent that any of the messages related to the sale and distribution of narcotics, inadmissible under Tennessee Rule of Evidence 404(b). The State asserted that under Rule 404(b), it was required to prove that Defendant knowingly possessed with intent to sell certain drugs which were referenced in the text messages. Therefore, the messages were admissible as to Defendant's knowledge and intent. The State noted that Defendant denied possessing the drugs.

In its written order denying Defendant's motion to exclude the text messages, the trial court concluded that the majority of the text messages were irrelevant to the case. However, the trial court found that "one exchange two days prior to the present offense date [November 24, 2016] where it appears someone is requesting that the defendant provide them with some narcotics," and Defendant "responded that he was on his way," was relevant and admissible under Tennessee Rule of Evidence 404(b). The trial court further concluded:

> The texts include statements of the defendant as recovered from a phone the defendant was using. Furthermore, the context makes it clear that the defendant was willing to engage in narcotics sales. Thus, the court finds proof of the other bad act to be clear and convincing.

> The defendant is charged with possessing a controlled substance with the intent to sell or deliver. The State is required to prove the defendant's intent in possessing the controlled substance. Rule 404(b) prohibits the use of other bad acts to show action in conformity with a character trait; however, it does permit proof of

other bad acts to show that the defendant had a specific intent in the current offense. This includes other bad acts showing that the defendant was engaging in an ongoing conspiracy to sell and/or deliver controlled substances.

The trial court cited to several cases from this court that affirmed the admissibility of similar evidence. The trial court found that "the evidence of the prior discussion about delivering a controlled substance to another person is relevant to show the defendant's intent to sell or deliver the controlled substance." The trial court further found that the text messages provided "highly relevant proof of the defendant's intent to sell or deliver a controlled substance. This probative value outweighs any danger of unfair prejudice."

*Ferguson Hearing*

Captain Steven Patrick, the Assistant Facility Commander of the Knox County Detention Facility, described the process followed when a person is arrested and brought into the detention facility for processing. Captain Patrick testified that arrested individuals are first unloaded and brought to the intake, "sally port" area, patted down, but not searched, asked to remove extra clothing, jewelry, shoes and socks, and then moved into the booking or intake area. Inmates are then moved into a "shower area" where they change out of their street clothes and into a detention facility uniform. A photograph of the shower stall room taken from the facility's security video cameras was exhibited to his testimony. The area was formerly used for showers, but now the stalls are used solely as changing stalls. Captain Patrick testified that the room contains three stalls, and an inmate is subject to being strip-searched depending on their charges. Captain Patrick noted that the changing stall doors are approximately chest high, and inmates are instructed to drape their street clothing over the door when changing. The clothing is then placed in a property crate located outside the door. Captain Patrick testified that the inmate then puts on their inmate uniform and exits the changing stall.

Captain Patrick testified that the detention facility has numerous surveillance cameras, but the footage from the cameras was not stored indefinitely. He searched to see if there was any video footage from November 26, 2016, and he did not find any video from that date. Captain Patrick further testified that he could not locate any videos stored on the system from 2016.

On cross-examination, Captain Patrick testified that the changing stall area is not covered by any camera angles within the detention facility "[b]ecause we do strip searches there[.]" He agreed that the changing stall area is supposed to be searched before an inmate enters the area to change clothes and again after an inmate leaves the stall.

Captain Patrick testified that video recordings from the many cameras in the detention facility are preserved when there is a request from the defense or the prosecution.

- 3 -

He said: "Then we burn it to a separate location." Captain Patrick testified that there was no request in this case for video recordings from November 2016 until sometime around November 2019. He noted that the video from November 2016 would have been preserved if anything unusual had happened, such as a fight or the mishandling of a prisoner. At the time of the *Ferguson* hearing, Captain Patrick said that he had security footage going back eleven months for the changing stall area of the detention facility.

*Trial*

At approximately 2:20 p.m. on November 26, 2016, Officer David Lee of the Knoxville Police Department observed Defendant driving a black vehicle with a broken taillight in the area of Linden and Spruce Streets, which was located within 1,000 feet of a school. Officer Lee followed the vehicle for a block and initiated a traffic stop. Officer Lee observed that the vehicle had a cracked windshield. Defendant had no form of identification and gave Officer Lee a name and Social Security number; however, the Social Security number did not match the name when Officer Lee ran the information through NCIC. Officer Lee also ran a check on the vehicle's license plate, and found that it did not match the vehicle. The video of the traffic stop was played for the jury.

Officer Lee removed Defendant from the vehicle and conducted a pat-down of his person. Defendant was wearing "somewhat baggy clothing," including a jacket and gym shorts under his jeans. Officer Lee then placed Defendant in the back of the patrol car until he could determine Defendant's identity. Officer Brian Baldwin, a K-9 officer, also arrived on the scene and walked his K-9 partner "Beny" around Defendant's vehicle, and the dog alerted to the odor of narcotics on the vehicle. Beny was trained to alert for the presence of marijuana, heroin, MDNA[1], cocaine, and crack cocaine but not the presence of Xanax. Officer Baldwin searched the vehicle and did not find the presence of any narcotics. He noted that a dog may alert on the odor of narcotics even after the drugs have been removed from a vehicle. Officer Baldwin found two cell phones during the search of the vehicle and asked Defendant for consent to look at the phones. Defendant denied ownership of the phones, so Officer Baldwin looked through one of them that was powered on. Officer Baldwin found pictures of Defendant as well as text messages referencing the exchange of pills. Defendant then said that he did not give Officer Baldwin permission to look at the phone. It was later confiscated for further examination.

Officer Lee eventually placed Defendant under arrest for driving without a license. He searched Defendant more thoroughly and discovered a pill in his left pocket that Officer Lee, based on his training and experience, described as a "Xanax totem pole," meaning that the pill was divided into sections so that it could be easily broken apart. Defendant

---

[1] The transcript reflects MDNA; however, MDMA is an abbreviation for Ecstasy or Molly.

indicated that he was "laid off" from work, but had possession of $192.  Officer Lee then transported Defendant to the Knox County Detention Facility.

Deputy Alejandro Torrez, an intake security officer with the Knox County Sheriff's Department, and another intake security officer removed Defendant from Officer Lee's patrol car when he arrived at the detention facility and conducted a pat-down of Defendant's clothing.  Deputy Torrez described his typical method of patting down individuals arriving at the detention facility as follows:

> I start underneath the armpits, pat down the sides, pat the chest and back, pat around the waistband, pat each pocket, and starting at the groin, two-hand.  One hand will go up between the groin and the leg.  Other hand will grab the back or pat down against the back and work my way down the legs, each leg individually."

Deputy Torrez did not discover anything concealed in Defendant's clothing.  At that point, Defendant removed his shoes and socks and some other clothing items, which were placed inside a bin in the "sally port."

Deputy Torrez took Defendant to the intake area for Defendant to change into his jail uniform.  Deputy Torrez explained that Defendant went into changing stall number one which had been searched at the beginning of the shift.  Prior to Defendant entering the changing stall, Deputy Torrez "looked over the door and as [he] opened the door, [he] didn't see anything, and [Defendant] entered."  There is a small bench in the changing stall, and Deputy Torrez saw nothing on the bench when Mr. Tate went in.  After Defendant took his clothes off and Deputy Torrez was handing Defendant the jail uniform, Deputy Torrez looked over the stall and saw Defendant's clothes and a green Crown Royal bag "pressed up against" Defendant's clothes on the bench.  Defendant told Deputy Torrez that the bag did not belong to him.  Defendant was then taken to the "holding area," and Deputy Torrez retrieved the Crown Royal bag which contained Xanax pills and heroin.  Deputy Torrez then contacted a supervisor and notified Officer Lee that he had found additional drugs.  Deputy Torrez agreed that items concealed in an inmate's underwear are not always discovered during a pat-down search.  He further agreed that there had been previous occasions when something was discovered after an inmate had already changed clothes.  Deputy Torrez placed the Crown Royal bag and drugs in a locker at the detention facility.  On cross examination, Deputy Torrez confirmed that the stall would have been searched at the start of his shift at 2:00 on an afternoon shift and that Defendant was booked in about 4:16 in the afternoon.

Investigator Terry Pate of the Knoxville Police Department, who was a member of the drug-related death task force, testified as an expert in the area of drug investigations.  He went to the detention facility and picked up the Crown Royal bag recovered by Deputy Torrez containing two plastic bags of heroin weighing 3.68 grams and twelve Xanax pills

consistent in appearance to the pill recovered from Defendant's pocket by Officer Lee during the initial traffic stop. Investigator Pate testified that the amount of Xanax pills and heroin in the bag led him to believe that the drugs were for resale rather than personal use. He noted that Crown Royal bags are frequently seen in drug investigations because they are "easy to maintain everything together and tighten it up, and you can get rid of it quicker." He agreed that a Crown Royal bag could be easily concealed in a person's undergarments.

Investigator Philip Jinks of the Knoxville Police Department Organized Crime Unit testified as an expert in the area of narcotics investigations. He obtained and executed a search warrant on the cell phone that was confiscated from Defendant's vehicle in this case. Using Cellebrite software, Investigator Jinks extracted data from the cell phone. Investigator Jinks testified that the phone contained "text message exchanges that indicated that [Defendant] was the user of the phone around the time of the arrest. There were also text messages indicating that Defendant was engaged in the distribution of heroin." A message sent two days prior to Defendant's arrest indicated that it was from Defendant and that he had lost his phone and was using the confiscated one. The messages also indicated that Defendant sold someone Xanax pills and eighty dollars in heroin.

Investigator Jinks opined that the amount of heroin recovered in this case was "certainly consistent with possession for distribution and not personal." He further opined that it "would be unusual for a heroin user to possess that much heroin at one time." When asked why it was unusual, Investigator Jinks replied:

> Well, heroin is very expensive. Most heroin users - - most heroin users use or inject somewhere between - - and this was talked about earlier - - a point or .1 gram up to .3 grams. Some very heavy heroin users will use up to a half a gram at a time. That's pretty unusual. That would be five points. A point of heroin right now in Knoxville is about $25 to $30 for one point. So with 3 and half grams, you have almost 35 points of heroin. That's a lot of heroin for a user to have. And, again, it's very expensive.

Investigator Jinks estimated that the amount of heroin found next to Defendant's clothing was worth approximately $1,000 if sold to individual users and slightly less if purchased by someone in bulk. He noted that he would expect a heroin user to also have drug paraphernalia such as a needle, small cut plastic straw, or a metal spoon with burn marks. Investigator Jinks said: "Based on the totality of the circumstances surrounding this arrest and seizure, including the weight amount of the heroin and the pills and the text messages, my opinion is that the heroin and pills were possessed with the intent to sell and deliver them."

**ANALYSIS**

I.      *Sufficiency of the Evidence*

Defendant argues that the evidence was insufficient to support his convictions for possession of Xanax and heroin with intent to sell or deliver. More specifically, he contends that the State failed to show that he had possession of the controlled substances found in the changing stall with his clothes in the Knox County Detention Facility. The State asserts that the evidence was more than sufficient to sustain the convictions because a rational trier of fact could have found beyond a reasonable doubt that Defendant possessed the Xanax and heroin in the changing stall at the detention facility.

When a defendant challenges the sufficiency of the evidence, this court is obliged to review that claim according to certain well-settled principles. A guilty verdict removes the presumption of innocence and replaces it with a presumption of guilt. *State v. Allison,* 618 S.W.3d 24, 33 (Tenn. 2021); *State v. Gentry,* 538 S.W.3d 413, 420 (Tenn. 2017). The burden is then shifted to the defendant on appeal to demonstrate why the evidence is insufficient to support the conviction. *State v. Jones,* 589 S.W.3d 747, 760 (Tenn. 2019). The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). On appeal, "all reasonable and legitimate inferences from the evidence must be drawn in favor of the prosecution and all countervailing evidence discarded." *State v. Weems*, 619 S.W.3d 208, 221 (Tenn. 2021). As such, this court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *Id.* (citing *State v. Stephens*, 521 S.W.3d 718, 724 (Tenn. 2017)). Questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *Allison,* 618 S.W.3d at 34; *Jones,* 589 S.W.3d at 760. "This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both." *State v. Williams*, 558 S.W.3d 633, 638 (Tenn. 2018) (citing *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011)).

In Tennessee, "[i]t is an offense for a defendant to knowingly . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39-17-417(a)(4). Possession of a controlled substance may be actual or constructive. *State v. Robinson*, 400 S.W.3d 529, 534 (Tenn. 2013) (citing *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001)). A person constructively possesses contraband when he has "'the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others.'" *Shaw,* 37 S.W.3d at 903 (quoting *State v. Patterson,* 966 S.W.2d 435, 444-45 (Tenn. Crim. App. 1997)). Mere presence in an area where drugs are discovered, or association with a person who is in possession of drugs, without more, is insufficient to support a finding of constructive possession. Constructive

possession rests on the totality of the circumstances of each case and may be proven by circumstantial evidence. T.C.A. § 39-17-419 (possession may be inferred from "relevant facts surrounding the arrest").

Viewed in the light most favorable to the State, the proof shows that Defendant possessed the Xanax and heroin found in the changing stall at the detention facility. After Defendant was initially pulled over, Officer Baldwin's dog alerted on Defendant's vehicle for the odor of narcotics. Although Officer Baldwin did not find any narcotics in the vehicle, Officer Baldwin testified that the dog could alert on the odor of narcotics even if the drugs were no longer present. When Defendant was placed under arrest, Officer Lee found a Xanax pill in Defendant's pocket.

After Defendant was transported to the Knox County Detention Facility and was changing into his jail uniform, Deputy Torrez discovered a green Crown Royal bag on the bench of the changing stall pressed up against the clothing that Defendant had been wearing at the time of his arrest. The green bag contained twelve Xanax pills consistent in appearance to the pill found in Defendant's pocket at the time of his arrest. There were also two corners from a plastic bag containing 3.68 grams of heroin. Deputy Torrez testified that the changing stall had been searched at the beginning of the shift, and there was nothing inside the stall. Deputy Torrez also did not see anything inside the stall when Defendant entered it to change clothes.

From this evidence, a rational juror could find that Defendant was in possession of the Xanax and heroin found in the changing stall. The jury heard testimony that Defendant was searched when he entered the detention facility, and nothing was found, and that Defendant denied ownership of the bag to Deputy Torrez. However, the jury, as was its prerogative, rejected Defendant's assertion that someone else left the bag of drugs in the changing stall. Defendant is not entitled to relief on this issue.

## II.    *Admission of Text Messages*

Defendant next contends that his convictions for possession of Xanax and heroin should be reversed because the trial court erred by admitting a text message exchange from his cell phone made two days before his arrest concerning a drug sale. Defendant asserts that intent was not a material issue in this case because Defendant denied that the drugs belonged to him and therefore, the trial court should not have admitted the messages to show his intent to distribute the drugs. The State counters that the text message exchange was admissible for a purpose unrelated to character and that the State was required to prove the "essential element of intent at trial" regardless of Defendant's trial strategy.

It is well-established "that trial courts have broad discretion in determining the admissibility of evidence, and their rulings will not be reversed absent an abuse of that discretion." *State v. McLeod,* 937 S.W.2d 867, 871 (Tenn. 1996). Tennessee Rule of

Evidence 404(b) permits the admission of evidence of prior conduct if the evidence of other acts is relevant to a litigated issue such as identity, intent, or rebuttal of accident or mistake, and the probative value outweighs the danger of unfair prejudice. Tenn. R. Evid. 404(b) Advisory Comm'n Cmts.; *see State v. Parton,* 694 S.W.2d 299, 303 (Tenn. 1985); *State v. Hooten,* 735 S.W.2d 823, 824 (Tenn.Crim.App. 1987). However, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait." Tenn. R. Evid. 404(b). Before admitting evidence under Rule 404(b), the rule provides that (1) upon request, the court must hold a hearing outside the jury's presence; (2) the court must determine that the evidence is probative on a material issue and must, if requested, state on the record the material issue and the reasons for admitting or excluding the evidence; (3) the court must find proof of the other crimes, wrongs, or acts to be clear and convincing; and (4) the court must exclude the evidence if the danger of unfair prejudice outweighs its probative value. Tenn. R. Evid. 404(b).

We find no abuse of discretion by the trial court in admitting the text messages from Defendant's cell phone. The text messages in question contain an exchange between Defendant and someone named "Danielle" in which Danielle asked Defendant to meet for some "h," and she also asked him to bring a "xanx." In one of the messages, Danielle texted: "[I]'m at [L]ovell so 20 min[utes] tops I need 80 please hook it up I beg you my tolerance is sky high." Danielle asked where to meet Defendant, and he responded that he was at the Weigel's on Summit Hill. Investigator Jinks at trial testified that the messages indicated that Defendant sold someone Xanax pills and eighty dollars in heroin.

The trial court in this case complied with the procedural requirements outlined in Rule 404(b). The court held a hearing outside the jury's presence concerning this matter and found that a material issue existed other than conduct conforming with a character trait, namely Defendant's intent to possess the heroin and Xanax with intent to sell, which the State was required to prove at trial. *See* T.C.A. § 39-17-417(a)(4). The trial court further found that there was clear and convincing evidence of the text message exchange. Finally, the trial court found that the probative value of the text messages was not outweighed by the danger of unfair prejudice. This court has previously found that evidence of prior drug sales is probative of the defendant's knowledge and intent to possess drugs for resale. *See State v. Richard Wayne Hampton,* No. W2006-02189-CCA-R3-CD, 2008 WL 169645, at *4 (Tenn. Crim. App., at Jackson, Jan. 18, 2008), *State v. Allen Jean Stephens,* No. M2004-00531-CCA-R3-CD, 2005 WL 1541850, *4 (Tenn. Crim. App., at Jackson, June 23, 2005); *State v. Roger M. Staples,* No. M2003-01433-CCA-R3-CD, 2004 WL 1337265, *4 (Tenn. Crim. App., at Nashville, June 14, 2004); *State v. Maurice Lashaun Nash,* No. W2000-02971-CCA-R3-CD, 2002 WL 1482731, *5 (Tenn. Crim. App., at Jackson, Feb. 8, 2002) (Tenn.2002); *State v. Johnny Wayne Tillery,* No. 01C01-9506-CC-00182, 1998 WL 148326, at *6 (Tenn. Crim. App., Nashville, Mar. 30, 1998); *see also State v. Little,* 854 S.W.2d 643, 649 (Tenn. Crim. App. 1992).

As to Defendant's assertion that intent was not a material issue in this case because Defendant denied that the drugs belonged to him, intent was a material issue regardless of the defense asserted by Defendant at trial. *See State v. Donald Mickens*, No. W2009-00586-CCA-R3-CD, 2010 WL 2697164, at *15 (Tenn. Crim. App., at Jackson, July 8, 2010) (quoting *United States v. Johnson*, 27 F.3d 1186, 1192 (6th Cir. 1994)) ("[W]here the crime charged is one requiring specific intent, the prosecutor may use 404(b) evidence to prove that the defendant acted with the specific intent notwithstanding any defense the defendant might raise."). Defendant is not entitled to relief on this issue.

### III. Motion to Dismiss

Finally, Defendant contends that the trial court erred by denying his motion to dismiss on the basis that the State, in violation of *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), failed to preserve video footage from the intake area at the detention facility from a two-hour period of time before the drugs were found in the changing stall. Defendant asserts that the video footage would have shown if anyone else had entered the changing stall and left the bag of drugs behind before Defendant entered the stall. He further asserts that the video footage would have resolved the "question of when and where Deputy Torrez looked over the changing stall." The State counters that Defendant has waived the issue by pursuing a new theory for relief on appeal. The State further argues that regardless of waiver, there was no duty to preserve the video footage from the intake room.

At the *Ferguson* motion hearing, Defendant argued that the video footage was exculpatory because it would have shown whether the drugs that were located belonged to Defendant and not someone else. He argued that the loss of the video prevented him from relying on it to form a defense. In the motion for new trial, Defendant argued, without offering any explanation as to why he was entitled to relief, that the trial court erred by denying his motion to dismiss. On appeal, Defendant asserts that the video footage from the intake room would have shown if anyone else entered the changing stall during Deputy Torrez's shift in the two hours before Defendant arrived, and it would have resolved the question of when and where Deputy Torrez looked over the changing stall. Defendant asserts that the video footage was exculpatory because it would have shown if anyone else left the bag of drugs in the changing stall. Although the State argues that the issue of whether the drugs belonged to someone else was raised for the first time on appeal, Defendant's arguments at the motion hearing and on appeal are consistent and because he has not raised a new ground for relief on appeal, we conclude that he has not waived this issue.

However, Defendant is not entitled to relief on this issue. The Tennessee Supreme Court in *State v. Ferguson* held that "the loss or destruction of potentially exculpatory evidence may violate a defendant's right to a fair trial." *State v. Merriman*, 410 S.W.3d 779, 784 (Tenn. 2013) (citing *Ferguson*, 2 S.W.3d at 915-16). The supreme court determined that the due process clause under the Tennessee Constitution was broader than

the due process clause under the United States Constitution and rejected the "bad faith" analysis adopted by the United States Supreme Court which provided that "'unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law.'" *Id.* at 784-85 (quoting *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988)). Rather, the court in *Ferguson* adopted a balancing approach requiring the trial court to determine "'[w]hether a trial, conducted without the [lost or] destroyed evidence, would be fundamentally fair.'" *Id.* at 785 (quoting *Ferguson*, 2 S.W.3d at 914).

When a defendant raises a *Ferguson* claim, a trial court must first determine "whether the State had a duty to preserve the evidence." *Id.* "[T]he State's duty to preserve evidence is limited to constitutionally material evidence described as 'evidence that might be expected to play a significant role in the suspect's defense.'" *Id.* (quoting *Ferguson*, 2 S.W.3d at 917). To meet the constitutionally material evidence standard, "the evidence must potentially possess exculpatory value and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id.*

> If the proof establishes that the State had a duty to preserve the evidence and that the State failed in its duty, the court must conduct a balancing analysis, considering the following factors:
>
> 1. The degree of negligence involved;
> 2. The significance of the destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and
> 3. The sufficiency of the other evidence used at trial to support the conviction.
>
> *Ferguson*, 2 S.W.3d at 917 (footnote omitted). The trial court must balance these factors to determine whether a trial would be fundamentally fair absent the missing evidence. *Merriman*, 410 S.W.3d at 785. If the trial court determines that a trial would be fundamentally unfair without the missing evidence, "the trial court may then impose an appropriate remedy to protect the defendant's right to a fair trial, including, but not limited to, dismissing the charges or providing a jury instruction." *Id.* at 786.
>
> This court reviews the trial court's decision regarding the fundamental fairness of a trial conducted without the missing evidence de novo. *Id.* at 791. The trial court's findings of fact are conclusive on appeal unless the evidence preponderates against them. *See id.* (citations omitted). This court reviews the trial court's

- 11 -

remedy for a *Ferguson* violation under the abuse of discretion standard. *Id.*

*State v. Terry Craighead and Sinead St. Omer*, No. M2017-01085-CCA-R3-CD, 2018 WL 5994974, at *8 (Tenn. Crim. App., at Nashville, Nov. 15, 2018).

In this case, we find that the State did not have a duty to preserve the video footage from the intake room because Defendant has not demonstrated that the evidence was exculpatory and would have played a significant role in his defense. As pointed out by the State, it is unreasonable that it could have anticipated that two hours of video footage showing whether any other individuals walked through the intake area before Defendant arrived would play a significant role in Defendant's defense. Captain Patrick testified that while the detention center had numerous surveillance cameras, none of the footage was stored indefinitely. He said that video recordings from the many cameras in the facility were preserved only when there was a request from the defense or the prosecution or if anything unusual had happened such as a fight or the mishandling of a prisoner. There was no request for the video recordings from November 16, 2016, made until November 2019, after the video footage was no longer available.

Further, although the video footage would have shown whether someone else may have entered the intake area, it would not have shown if anyone entered the changing stall with the bag of drugs. Captain Patrick testified that the changing stall area was not covered by any camera angles because strip searches were sometimes conducted in the area. The exhibited photograph confirmed that the security camera did not capture that area. "The mere possibility of exculpatory content does not trigger a finding that the State failed in its general duty to preserve evidence under *Ferguson*." *State v. Ronnie D. Sims*, No. M2004-02491-CCA-R3-CD, 2005 WL 3132441, at *8 (Tenn. Crim. App., at Nashville, Nov. 22, 2005). As for Defendant's assertion that the video footage may have "resolve[d] the question of when and where Deputy Torrez looked over the changing stall, this question was resolved by Deputy Torrez's testimony that was subject to cross-examination. Deputy Torrez testified that he looked over the changing stall as he handed Defendant's jail uniform to him and saw the bag of drugs on the bench "pressed up against" Defendant's clothes. Deputy Torrez testified that the changing stall had been searched at the beginning of Deputy Torrez's shift, and nothing was found inside. Likewise, Deputy Torrez looked and did not see anything inside the stall when Defendant entered it to change clothes.

The video footage from the intake area at the detention facility would not have resolved the issue of whether someone else left the bag of drugs inside the changing stall. The changing stall area was not covered by any camera angles within the detention facility. Defendant is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing analysis, we affirm the judgments of the trial court.


_____
JILL BARTEE AYERS, JUDGE